[Civ. No. 1154. Fifth Dist. Sept. 17, 1970.]

W. M. McCULLOUGH, as Executor, etc., et al.,
Plaintiffs and Respondents, v.
T. CLIFTON JONES et al., Defendants and Appellants.

**COUNSEL**

Hourigan & Smith and John Hourigan for Defendants and Appellants.

Feierbach & Thurlow, George L. Thurlow and Adolph Feierbach for Plaintiffs and Respondents.

OPINION

COAKLEY, J.—The Van Leuvens,[1] husband and wife, then 80 and 84 years, respectively, instituted this action for declaratory relief and damages. The defendants and appellants are three doctors who, together with their clinic manager, Roy Metcalf, purchased the Van Leuvens' 1,200-acre dude or guest ranch located in Tulare County. The Van Leuvens retained a life estate in a house and three acres, which at the time of the transaction were in a badly rundown condition. The Van Leuvens spent substantial sums in making their new home comfortable and in developing about one-half acre of garden. Prior to selling the ranch and moving to the restored house and garden, the Van Leuvens lived in a manner which the court found to be "comfortable and even luxurious." This finding was premised upon evidence that the Van Leuvens had occupied, as their private quarters, a large apartment in the main lodge of the guest ranch; that the lodge had won an architectural award; that the landscaping surrounding the lodge consisted of trees, a lawn area, flowering shrubs, annual and perennial plants, and considerable rock work forming multi-level retaining walls. There was also a beautifully maintained swimming pool.

The deed contained a provision with respect to the house and premises in which the Van Leuvens retained a life estate, which read as follows: ". . . buyers further agree to provide and pay for all exterior maintenance and repairs of said dwelling and premises, including painting . . . ."

The issue is: does the provision that the buyers shall "pay for all exterior maintenance . . . of said dwelling and *premises*" (Italics added) require the appellants to pay for maintaining the gardens surrounding the house in which the Van Leuvens retained a life estate, and into which they moved?

The court found that it did. The court further found that the labor involved in maintaining the gardens[2] "in a manner comparable with the mode of life of the said plaintiffs prior to the sale of Riverway Ranch" required 20 hours per week at $2.25 per hour for a total expenditure of $45 a week. It awarded the Van Leuvens that sum from the date of trial until termination of their life tenancy. The court also awarded them $45 per week for the four-year period preceding the filing of this action, i.e., from January 30, 1963, to January 30, 1967.

The action presents the classic example of (1) an ambiguous deed,

---

[1] W. W. McCullough, executor, was substituted as plaintiff in place of John F. Van Leuven, deceased, and Marjorie J. Williams, executrix, was substituted in place of Sue Hoyt Van Leuven, deceased.

[2] As distinguished from the cost of plants, shrubs, and materials for which respondents made no claim.

(2) admission of extrinsic evidence as an aid in interpreting the deed, (3) a conflict in the extrinsic evidence, and (4) resolution of the conflict.

The rules for resolving such a dispute are well settled. They are:

█ (1) Where a document is ambiguous, extrinsic evidence is admissible as an aid in interpretation. (*Parsons v. Bristol Dev. Co.,* 62 Cal.2d 861 [44 Cal.Rptr. 767, 402 P.2d 839].)

(2) *Parsons* appears to hold that, when the interpretation of a writing turns upon the credibility of conflicting extrinsic evidence, the appellate court is bound by the interpretation reached by the trial court. *Estate of Geffene,* 1 Cal.App.3d 506, 511 [81 Cal.Rptr. 833], unequivocally so holds. █ Where the construction given the instrument is supported by substantial, though conflicting, evidence in which credibility is a factor, and the evidence appears to be consistent with the true intent of the parties, an appellate court will not substitute another interpretation though such other interpretation may be equally tenable. (*Kautz v. Zurich General Acc. & Liability Ins. Co.,* 212 Cal. 576, 582 [300 P. 34].)

Although the application of the rule of law just described disposes of this aspect of the case, we, nevertheless, point out that there was only slight conflict in the evidence. Negotiations leading to the purchase were chiefly between Van Leuven and Metcalf, on behalf of the doctors, as were the discussions subsequent to the purchase, including discussions regarding maintenance of the garden. Van Leuven did not recall discussing the subject of the gardens with any of the doctors. Only one of the three doctors testified to any discussion of that subject with Van Leuven. Metcalf testified that on his initial visit to the ranch, and in connection with their discussion of a life estate in another residence and premises, Van Leuven directed his attention to the grounds surrounding the main lodge and said, "This is basically what I am talking about with regard to the type of landscaping and type of home that Sue and I would be obliged to have . . . that we cannot lower our standards [though] we, of course, do not expect it to be anywhere near as elaborate as the gardens around the main lodge of the guest ranch." Metcalf further testified that he reported to his associates, the doctors, all of the discussion had with Van Leuven. This was before the sale and purchase was consummated. The evidence is that the gardens developed by the Van Leuvens at their new home were not as elaborate as those at the lodge.

█ The evidence as to the comfortable and luxurious manner of living enjoyed by the Van Leuvens prior to the sale is significant as indicating that it was highly unlikely that the Van Leuvens would have intended to live in a badly rundown home, surrounded by wild and unkempt grounds,

or that the appellants could reasonably have believed that that was the Van Leuvens' intention.

The remaining point raised by appellants is that of laches. They contend that the first demand upon them to maintain the gardens was in June 1966, when the Van Leuvens' attorney made a written demand that appellants maintain the grounds surrounding the home. Appellants further contend that, at most, they should be held responsible for gardening expense only from the date of that letter. However, the record shows a similar written demand dated January 23, 1963, and oral inquiries of Metcalf on the subject twice in 1960.

Appellants point out that though the issue of laches was raised in their answer there was no express finding on the issue. This presents the question of whether the failure to make a finding on that issue requires a reversal of the judgment. ■ Ordinarily, a reversal is required when there is a failure to find on a material issue raised by the pleadings and supported by the evidence sufficient to sustain a finding in favor of the complaining party. (*Duff* v. *Duff*, 256 Cal.App.2d 781, 785 [64 Cal.Rptr. 604].) However, there are types of cases in which the rule is not applicable, and there are exceptions to the rule.

■ We hold that the court's failure to make an express finding on the issue of laches did not constitute error for these reasons:

(A) When the case is one for declaratory relief and damages, as here, laches is not available as a defense to the cause of action for money damages. (*Abbott* v. *City of Los Angeles*, 50 Cal.2d 438 [326 P.2d 484]; *Weber* v. *Marine Cooks' & Stewards' Assn.*, 123 Cal.App.2d 328 [266 P.2d 801].)

■ (B) The failure to make a finding on an issue raised in the pleadings and supported by substantial evidence is harmless when the missing finding reasonably may be found to be implicit in other findings. ■ The failure to find is also harmless when, under the facts of the case, the finding necessarily would have been adverse to the appellants. (*Agair, Inc.* v. *Shaeffer*, 232 Cal.App.2d 513, 520 [42 Cal.Rptr. 883]; *Space Properties, Inc.* v. *Tool Research Co.*, 203 Cal.App.2d 819, 829-830 [22 Cal.Rptr. 166].) Such is the case at bench. The court impliedly found that the Van Leuvens were not guilty of laches and there is substantial evidence to support such implied finding. Therefore, a finding on the issue would not have benefited appellants.

■ (C) Laches is dependent not only on delay in instituting suit, but also upon injury occasioned by delay. (*Abbott* v. *City of Los Angeles*, *supra*, 50 Cal.2d 438, 459.) "Laches is neither technical nor arbitrary, and the doctrine is not designed to punish a plaintiff, despite the fact that he

may have been negligent. On the contrary, laches may be invoked only where a refusal to do so would permit an unwarranted injustice to be done to the defendant." (18 Cal.Jur.2d, Rev., Equity, § 45, p. 185.)

Van Leuvens' expert witness testified that the garden required 20 hours of labor per week and that $50 per week was a reasonable charge. Van Leuven testified that he paid $48 per week to maintain the garden. The court awarded $45 per week. ▉ The estimate of appellants' expert witness that care of the garden required only one hour per week was understandably rejected by the court, bearing in mind that one-half acre of garden is rather extensive, and bearing in mind the standard by which the Van Leuvens had maintained the garden of the lodge, i.e., their home at the time of the sale.

▉ The statute of limitations relieved appellants of liability from 1960 to January 1963. To that extent they have benefited. Appellants failed to carry their burden of proving that they were prejudiced by the delay in instituting this action. (See *Weber* v. *Marine Cooks' & Stewards' Assn., supra,* 123 Cal.App.2d 328, 331.)

The judgment is affirmed.

Stone, P. J., and Gargano, J., concurred.

A petition for a rehearing was denied October 15, 1970, and appellants' petition for a hearing by the Supreme Court was denied November 10, 1970.