[Civ. No. 37576. First Dist., Div. One. Oct. 22, 1976.]

KELLY McADAMS et al., Cross-complainants and Appellants, v. BILLY McELROY et al., Cross-defendants and Respondents.

## COUNSEL

Stokes, Steeves, Calligan & Warren, Stokes, Steeves, Truitt, Calligan & Warren and Michael D. Calligan for Cross-complainants and Appellants.

Huber & Goodwin, Murray, Cissna & Prior and Norman C. Cissna for Cross-defendants and Respondents.

## OPINION

**SIMS, J.**—Cross-complainants, who in the lower court were, and will be here, collectively referred to as McAdams, have appealed from a judgment which denied their claim to one-half of the timber rights on lands which in 1958, as a result of the dissolution of a partnership, had been distributed to cross-defendants, who similarly were, and will be, collectively referred to as Ogletrees. They contend that the trial court committed prejudicial error in failing to make requested findings on whether the parties in 1958 treated the timber as a partnership asset subject to distribution, and on when the cross-complainants' cause of action accrued. They further allege that the court's finding that the cross-defendants were not estopped to assert the statute of limitations is not supported by substantial evidence. We find no error in the proceedings below. The judgment must be affirmed.

The facts as reflected by the uncontroverted findings show that in June 1958 the parties, the McAdams and the Ogletrees, were partners, each with a half interest in the Ogletree Lands Company partnership, and at that time entered into negotiations for the purpose of dissolving the

partnership and distributing the partnership assets among themselves. The parties reached a tentative division of assets of the partnership which provided that cross-complainants the McAdams would receive (as part of their share) a describable 160 acres. Before the instruments implementing this division had been executed, the parties were advised by the attorney who was handling the transaction and by the title company that Simpson Timber Company owned the timber on seven forty-acre parcels of real property which were included in the property to be conveyed to the cross-defendants, Ogletrees by the tentative division. Thereafter, in order to effect a division of the assets of the partnership, the parties reached an agreement which differed from the tentative division of assets, in that the aforesaid 160 acres was received by the Ogletrees rather than by the McAdams. The agreement was carried out and performed by the parties.

On October 1966, the Ogletrees filed an action to quiet title to the seven forty-acre parcels and for declaratory relief naming Simpson Redwood Company as a defendant. In the first cause of action it sought to quiet title against all persons, and in the second cause of action it sought a declaration that the timber company had no right, title or interest in the timber on the seven forty-acre parcels as the successor in interest of a grantor of those parcels who had reserved certain timber rights in a 1913 conveyance to the Ogletrees' predecessor in interest.

The court found that subsequent to the filing of the action the Ogletrees obtained from the timber company a relinquishment of any and all claims to the timber on the seven forty-acre parcels. Meanwhile the McAdams on October 20, 1967, filed an answer and cross-complaint in the quiet title action. In their cross-complaint they referred to the dissolution agreement of June 6, 1958, and the deeds executed in connection with that agreement, setting forth copies as exhibits. They alleged that the agreement was intended to distribute the assets of the partnership justly and equally among the partners, and that due to mutual mistake of law and fact by McAdams and Ogletrees the agreement represents an unfair and unequal distribution of partnership assets, in that said agreement by means of the deeds convey to the Ogletrees a greater interest and to the McAdams a lesser interest than both sides intended to convey. The mistake allegedly arose from both sides' interpretation of the 1913 deed, in that each side believed that the timber company was entitled, as successor of the grantor "to a separate, entire and complete ownership in perpetuity of the timber rights

pertaining to said real property." They further allege that in 1963 cross-complainants learned that they had been mistaken in their interpretation of the 1913 deed in that the rights reserved by the timber company's predecessor in its grant only referred to the logging of merchantable timber in progress at that time and had expired with the passage of time; and that since such discovery they have sought revision of the agreement of dissolution so that the timber on said seven forty-acre parcels could be correctly divided between the parties. The prayer of the cross-complaint was for reformation of the partnership agreement.

The Ogletrees generally denied that there was any mistake and unequal division of property. They alleged affirmatively that the McAdams, with full knowledge of the uncertain and doubtful nature of the claim of the timber company, waived all interest in the timber involved by signing and carrying out the partnership dissolution agreement. They also set up estoppel, the statute of limitations (Code Civ. Proc., § 337, subd. 3), and general allegations to the effect that the cross-complaint failed to set forth a cause of action for reformation.

On May 29, 1970, the McAdams filed a supplemental and amended cross-complaint. It echoed the allegations of the original cross-complaint and more specifically alleged that the agreement was intended to distribute the assets of the partnership one-half to the McAdams and one-half to the Ogletrees. It again alleges mutual mistake of law and fact with respect to the timber on the seven forty-acre parcels in the particulars originally set forth. It repeats the allegations concerning discovery and demand, and adds a paragraph alleging that the Ogletrees have acquired the relinquishment of the timber company's claim for $21,000. In their prayer they offer to pay one-half of the expenses incurred by the Ogletrees as a condition of quieting title to one-half of the timber as their share.

The Ogletrees' answer again set up estoppel, the statute of limitations (both Code Civ. Proc., § 338, subd. 4 and § 337, subd. 3), and failure to state a cause of action.

Following trial the court rendered its "Memorandum of Opinion" and entered judgment on the findings of which complaint is now made. In addition to the findings which have been referred to the court found that

the McAdams at the time they entered into the dissolution agreement did not believe that the timber company owned the timber on the seven forty-acre parcels; and that they entered into the agreement as the final act of negotiations with the Ogletrees because it was necessary to give them the 160 acres of property (which was referred to above) if a division of assets of the partnership was to be reached. The court found that there was no mutual mistake of fact or of law in the execution of the agreement; that the supplemental and amended cross-complaint was barred by the provisions of subdivision 4 of section 338 of the Code of Civil Procedure; and that the Ogletrees were not estopped from asserting the statute of limitations. The court concluded that the McAdams had no interest in the timber, and as well, that the timber was not an individual asset of the original partnership.

The evidence where pertinent is set forth in connection with the review of the findings as proposed and made.

I

Apparently in response to the McAdams' request for findings of fact and conclusions of law (see Code Civ. Proc., § 632; and Cal. Rules of Court, rule 232), the Ogletrees filed proposed findings of fact and conclusions of law. These have not been made part of the record, but the "Objections and Proposed Counter-Findings To Proposed Findings Of Fact and Conclusions Of Law, And Request For Specific Findings" filed on behalf of the McAdams are included. Their first contention on appeal is not with respect to their objections or their proposed counterfindings. The record shows that they were sustained and adopted in substantial part. The McAdams claim that the findings are inadequate because the court failed to make findings on specific issues on which they requested a finding.

The applicable law is found in sections 632 and 634 of the Code of Civil Procedure, rule 232 of California Rules of Court, and applicable precedents. Section 632 provided and provides in relevant part, "Where findings are required, they shall fairly disclose the court's determination of all issues of fact in the case." Rule 232 prescribes the procedure for requesting, preparing and settling findings of fact and conclusions of law. Subdivision (d) provides for objections to the findings and reads in

pertinent part, "(d) Any party affected by the judgment . . . may . . . serve and file objections to the proposed findings, conclusions or judgment, which may include proposed counterfindings and conclusions, or an alternative form of judgment or a request for further or specific findings." Subdivision (e) reiterates and elaborates on the statutory mandate found in section 632 as follows: "(e) Findings shall fairly disclose the court's determination of all issues of fact material to the judgment in the case and shall be concisely and chronologically stated whenever practicable. Findings shall not refer merely to the truth or falsity of allegations contained in the pleadings." Section 634 of the Code of Civil Procedure restricts the right to infer on review that the trial court found in favor of the prevailing party on a fact or issue when "the court has not made findings as to all facts necessary to support the judgment *or* a finding on a material issue of fact is ambiguous or conflicting, *and* the record shows that such omission, ambiguity or conflict was brought to the attention of the trial court . . . ." (Italics added.)

█   Preliminarily we join with the opinion in *Jay* v. *Dollarhide* (1970) 3 Cal.App.3d 1001 [84 Cal.Rptr. 538], in condemning the practice, engaged in here, of generally requesting a finding on a subject without suggesting the specific factual finding requested. There the losing party apparently requested findings on 56 subjects. The court observed, "The established practice presupposes that counsel desiring such special findings will draft and propose them in the usual form [citation]. The action of the court in approving or disapproving them will constitute the ruling. Appellants here sought to conduct a general inquisition and neither drafted nor submitted any proposals for such consideration." (3 Cal.App.3d at p. 1033.) Here the parties affected, after proposing seven specific objections and eight specific counterfindings to the findings proposed by the prevailing parties, requested the court to make findings with respect to fourteen subjects without indicating what ultimate fact they considered the evidence established in connection with those matters. They now seek review of six of those requests. That practice unfairly burdens the trial judge in that he must not only speculate which questions embrace ultimate as distinguished from evidentiary facts, but also search his recollection of the record without the assistance of a suggestion from counsel. Particularly if there is evidence which would tend to give a multiple choice in answering the interrogatory, the court should have guidance from the requesting party.

On appeal the reviewing court is faced with the question of what finding could have been made under the evidence to the question, and the question of whether other findings have covered the subject matter. Moreover, as noted below, the questions are redundant because the same point more properly may be made by reference to the rejection of a specific proposed counterfinding. (See fns. 1, 2, 4, 5 and 6 below.) We conclude that the practice followed in this case is not sufficient to raise a reviewable issue. The request for further or specific findings contemplated by rule 232 should be a request phrased in terms of a finding; a question should not suffice. Nor should such questions, as distinguished from specific objections and specific counterfindings or additional findings, serve to give the objector the benefits of the provisions of section 634.

In *Morris* v. *Thogmartin* (1973) 29 Cal.App.3d 922 [105 Cal.Rptr. 919], the court which decided *Jay* v. *Dollarhide*, reversed itself on this issue. After reviewing the amendment of section 634 of the Code of Civil Procedure in 1968, it concluded: "Construing this change in conjunction with the fundamental purpose of the legislation as being to require the trial court to explain the factual and legal basis upon which its decision rests, we are impelled to the conclusion that the duty of complying with the requirement for special findings rests upon the trial court, not the losing party. The antipodal position of the trial judge who has decided a cause against a party and the losing party is obvious. To require a losing party to guess and speculate as to the factual and legal basis of the court's position and *ratio decidendi* by requiring him to prepare the form and content of findings and conclusions is inconsistent with the purpose and history of the statute; further, it is incongruous to require him to prepare findings and conclusions that he may subsequently desire to attack in the trial court or on appeal." (29 Cal.App.3d at p. 930.)

We do not approve that recantation. We note that a rehearing and hearing were each denied in the earlier case. The premise that the losing party is required to prepare findings and conclusions that he may subsequently desire to attack is unsound. We merely believe he should prepare a finding that he believes is sustained by the record and is favorable to him. Then both the trial court, and the reviewing court on appeal can concentrate on that issue if the proposed finding is rejected and the trial court fails to find the contrary fact. The procedure approved in the later opinion leaves the court without the guidance it should secure from the losing party.

Since the foregoing principles have not heretofore been fully elucidated, we may give the appellants the benefit of the doubt and examine the merits of their contentions. They rely upon principles collated in *Ball* v. *American Trial Lawyers Assn.* (1971) 14 Cal.App.3d 289 [92 Cal.Rptr. 228], as follows: "Whether a finding be in terms of a finding of an ultimate fact or whether it be a mislabeling of a conclusion of law, in face of a request for findings of specific facts under Code of Civil Procedure section 634, a finding may be inadequate. The purpose of section 634 'was to discourage the mere finding of so-called ultimate facts when such method left counsel and the appellate court unable to determine the trial court's resolution of the conflicting facts needed for a factual determination of the case. The purpose of the amendment was to compel the trial judge, when requested, to make findings on specified material issues of fact.' (*Garber* v. *City of Los Angeles* (1964) 226 Cal.App.2d 349, 354, 355 . . . ; and see *Shepherd* v. *DeVille Engineering Constr. Co.* (1968) 268 Cal.App.2d 596, 605 . . . .) A finding on a subsidiary fact probative of the ultimate fact can be material. 'The findings of probative facts can be used to overcome an express finding of the ultimate fact found, or [*sic*] where it appears that the trial court made the alleged finding of ultimate fact simply as a conclusion from the particular facts found.' (*Robinson* v. *Raquet* (1934) 1 Cal.App.2d 533, 541 . . . .) The findings of fact must be definite and certain so that the defeated party may show how or in what manner the findings made are unsupported by the evidence. [Citations.]" (14 Cal.App.3d at p. 307. See also *Longfellow* v. *Presidente Miguel Aleman* (1974) 36 Cal.App.3d 508, 515 [111 Cal.Rptr. 643]; *San Luis Obispo Bay Properties, Inc.* v. *Pacific Gas & Elec. Co.* (1972) 28 Cal.App.3d 556, 566 [104 Cal.Rptr. 733]; *McCullough* v. *Jones* (1970) 11 Cal.App.3d 270 [89 Cal.Rptr. 646]; *Jay* v. *Dollarhide, supra,* 3 Cal.App.3d 1001, 1033; and *Anderson* v. *Southern Pac. Co.* (1968) 264 Cal.App.2d 230, 234-235 [70 Cal.Rptr. 389].)

In the case last cited the court stated, "Where findings upon an issue are requested but not made, an appellate court cannot conclude from the record that the trial court decided such issues against the complaining party. Code of Civil Procedure section 634 provides that where findings are requested on a pertinent issue, but none are made, an appellate court may not infer that 'the trial court found in favor of the prevailing party on such issue.' A judgment rendered without findings on all material issues must be reversed. [Citation.] Not only must the court make findings on all material issues, but the findings made must be definite and certain. [Citation.]" (264 Cal.App.2d at pp. 234-235.)

On the other hand there are several countervailing principles which apply in this case. In *Jay* v. *Dollarhide, supra,* the court observed, "The Code of Civil Procedure sections 632 and 634 only require that the findings shall disclose the court's determination of all issues of fact in the case. This has been properly interpreted to relate to ultimate facts and not to require the court to make a specific determination on every conflict of evidence, much less, to diagram all the intermediate decisions on points of law. [Citation.] It still is the rule that the findings of ultimate facts include by necessary intendment the findings on all intermediate facts necessary to sustain them [citation], and where this is so, the court may reject a request for specific findings that in reality is a request for a statement of evidentiary facts. [Citation.] On appeal, reasonable conflicts in the evidence are construed in favor of the findings. [Citation.]" (3 Cal.App.3d at p. 1032. See also *San Luis Obispo Bay Properties, Inc.* v. *Pacific Gas & Elec Co., supra,* 28 Cal.App.3d 556, 566-567; *McCullough* v. *Jones, supra,* 11 Cal.App.3d 270, 275; *St. Julian* v. *Financial Indemnity Co.* (1969) 273 Cal.App.2d 185, 194-195 [77 Cal.Rptr. 843]; *South Santa Clara etc. Dist.* v. *Johnson* (1964) 231 Cal.App.2d 388, 404-405 [41 Cal.Rptr. 846]; *Lewetzow* v. *Sapiro* (1961) 188 Cal.App.2d 841, 844-846 [11 Cal.Rptr. 126]; *Schultz* v. *Steinberg* (1960)182 Cal.App.2d 134, 141 [5 Cal.Rptr. 890]; and *Brown* v. *Schroeder* (1927) 88 Cal.App. 192, 201-202 [263 P. 325].)

The failure to make an express finding on a material issue is not always prejudicial. ▇ "The failure to make a finding on an issue raised in the pleadings and supported by substantial evidence is harmless when the missing finding reasonably may be found to be implicit in other findings. The failure to find is also harmless when, under the facts of the case, the finding necessarily would have been adverse to the appellants. [Citations.]" (*McCullough* v. *Jones, supra,* 11 Cal.App.3d 270, 275. See also *West Pico Furniture Co.* v. *Pacific Finance Loans* (1970) 2 Cal.3d 594, 613 [86 Cal.Rptr. 793, 469 P.2d 665]; *Schrader Iron Works, Inc.* v. *Lee* (1972) 26 Cal.App.3d 621, 637 [103 Cal.Rptr. 106]; and *Brown* v. *Schroeder, supra,* 88 Cal.App. 192, 202.) In short, "Omission to find, if the judgment is otherwise supported, is harmless error unless the evidence is sufficient to sustain a finding in favor of the complaining party which would have the effect of countervailing or destroying other findings [citations]." (*Schultz* v. *Steinberg, supra,* 182 Cal.App.2d 134, 141.)

The McAdams' requests must be reviewed in the light of the foregoing precepts.

-A-

"1. ██ Was it the intent of the parties in dividing the partnership assets to divide and distribute the assets one-half to cross-complainants and one-half to cross-defendants, as nearly as possible?" The court found, ". . . the parties entered into negotiations for the purpose of dissolving the partnership and distributing the partnership assets among the partners"; "in order to effectuate a division of the assets of the partnership, the parties reached an agreement . . . ; and said agreement was carried out and performed by the parties"; and "[the McAdams] entered into the agreement as the final act of negotiations with [the Ogletrees], because it was necessary to give [them] the . . . 160 acres of real property if a division of assets of the partnership was to be reached."

The foregoing findings clearly cover the subject.[1] In view of the qualification "as nearly as possible," the trial court might have found from the evidence that such intent did or did not exist. The record reflects that the two factions were attempting to secure an agreement, presumably to avoid court proceedings for dissolution of the partnership. It may be assumed that each was seeking to secure what it, not what the other, considered a fair share, and that in so doing each was aware that it was only legally entitled to one-half. In this sense the finding would be in the affirmative. The finding would only be material if it tended to show an agreement that each was to ultimately get one-half regardless of how the values might fall on the original division. In that sense a negative finding would be warranted because there is no evidence to show such an intent, and it would be inconsistent with the express findings that the agreement was made and executed and was not subject to rescission or reformation because of mistake of fact or law. Moreover, the finding would be irrelevant and immaterial as there is no evidence to show that the property received by the Ogletrees, including the timber rights, is of greater value than the property received by the McAdams. There is nothing to show that the agreement was arrived at other than as a result of hard bargaining by both factions.

[1]The court expressly rejected a proposed counterfinding of the McAdams reading: "The parties entered into an oral agreement for the purpose of dissolving the partnership and distributing the partnership assets among the partners, *intending thereby to distribute assets as nearly equally as possible between McAdams and Ogletree,* and according to such agreement McAdams was to receive 160 acres in Section 6, Township 6 North of Range 2 East, Humboldt Meridian." (Italics added.)

-B-

■ "Why did the parties change from the agreement that would have given cross-complainants McAdams, et al, 160 acres in Section 6, Township 6, to the final dissolution agreement which gave those 160 acres to cross-defendants Ogletree, et al?"

The findings reflect that the 160 acres in question were received by the Ogletrees rather than the McAdams in the final agreement "in order to effectuate a division of the assets of the partnership," and "because it was necessary to give [the Ogletrees] the . . . 160 acres of real property if a division of assets of the partnership was to be reached." There was no failure to find on this subject.[2]

The McAdams apparently believe that because the agreement to give the Ogletrees the 160 acres, over and above what was included in a tentative agreement, followed the receipt of information from the attorney and the title company that the records showed ownership of timber rights in the 7 40-acre tracts in another, the 160 acres was surrendered to the Ogletrees to compensate them for the loss of that timber. The court found, however, on sufficient evidence which included the admission of Ina May McAdams and Kelly McAdams that the McAdams did not believe that the timber company in fact owned that timber.[3] Moreover, the record reflects that the tentative agreement

---

[2]The court expressly rejected a proposed counterfinding reading: "After being advised by the attorney and the title company that the timber on the 7/40's was not an asset of the partnership, the parties eliminated that asset from consideration, treated it as not being an asset subject to distribution, and reached another agreement which modified the preceding agreement by conveying to Ogletrees the 160 acres in Section 6, Township 6."

[3]The 1913 deed to the partnership's predecessor in title contained the following reservation:

"*Provided, However,* That there is expressly excepted from the operation of this Deed, and not conveyed hereby, all of the timber of every kind, both standing and fallen, on said Parcel Two above described.

"*Provided further,* That there is expressly excepted from the operation of this Deed the right to enter and re-enter said Parcels One, Two and Three for the purpose of removing said timber from Parcel Two, said right so excepted to include right to remove said timber in any form, whether in form of logs or lumber, shingle or shake bolts or other forms; and to include all appurtenant rights necessary to accomplish such removal in such manner as may be most advantageous to the parties so removing said timber."

The question was whether this reserved all timber in perpetuity or merely timber in existence in 1913. (Cf. *Sears* v. *Ackerman* (1903) 138 Cal. 583, 586 [72 P. 171], with *Buffum* v. *Texaco, Inc.* (1966) 241 Cal.App.2d 732, 734-736 [50 Cal.Rptr. 852].) There is

referred to in the findings had reduced the Ogletrees' share by 290 acres from what had been proposed in the original negotiations. There was, therefore, ample reason for the Ogletrees to insist on getting a portion, 160 acres, of that change back.

-C-

■ The foregoing points appear to be aimed at the McAdams' theory of reformation of the partnership agreement to give them one-half of the timber rights mistakenly conveyed to the Ogletrees in the belief they did not exist. (See *Cleghorn* v. *Zumwalt* (1890) 83 Cal. 155, 157-158 [23 P. 294].) A second theory which depends upon the same alleged mistake, and assertedly warrants the same claim is that the timber rights were never a subject of the dissolution agreement, and therefore remain subject to division as an undisposed asset of the original partnership. (See *Simoni* v. *Simoni* (1962) 210 Cal.App.2d 780, 782 [27 Cal.Rptr. 146].) On this score, the McAdams presented the following interrogatories to the court:

"When the parties agreed to the final dissolution agreement, did they treat the timber on the 7/40's as a partnership asset subject to distribution?

"At the time of execution of the final dissolution agreement dated June 6, 1958, was the timber on the 7/40's an asset of the partnership subject to distribution?

"When Kelly McAdams agreed to changing the dissolution agreement so as to convey to Ogletree, et al., the 160 acres in Section 6, Township 6, did he treat the timber on the 7/40's as an asset of the partnership subject to distribution?

"When Ben Ogletree, et al, agreed to changing the dissolution agreement so as to convey to Ogletree, et al, the 160 acres in Section 6,

---

evidence to show that when the Ogletree family originally acquired the property in 1946 the provisions in the deed were considered as applying only to timber standing in 1913, and that all the timber on the property had grown subsequent to 1918 when the ranch had been burned over.

Township 6, did they treat the timber on the 7/40's as an asset of the partnership subject to distribution?"

In addition to the findings which have been referred to, the court expressly concluded: "The timber which is located on said real property is not an undivided asset of the partnership known as Ogletree Lands Company."[4] In the absence of any reservation in the dissolution agreement or in the deeds executed pursuant to its terms the passage of title to the land would carry the timber rights. (Civ. Code, §§ 658, 660, 833 and 1084; and *McKeever* v. *Locke Paddon Co.* (1922) 58 Cal.App. 51, 53 [207 P. 1040].) None of the deeds prepared in connection with the so-called interim or tentative agreement, or with the final agreement, mentioned the reservation in the 1913 deed. On the other hand, the parties did reserve and divide among themselves mineral rights underlying the whole of the partnership property, and McAdams expressly agreed to secure a release of certain timber rights then, in 1958, affecting the property conveyed to the Ogletrees. The court's conclusion insofar as it embodies a finding of fact is supported by substantial evidence. It and the findings already reviewed not only answer the first two questions but also answer them adversely to any finding that would assist the McAdams. Any refusal to make a further finding can in no way be an error. With respect to Kelly McAdams, the evidence was in conflict. The court after considering all the evidence apparently disbelieved his testimony that he gave up the 160 acres to compensate the Ogletrees for the cloud on their title to the timber in the 7 40-acre parcels. Even if it erred in that regard, it would be immaterial because the unilateral view, contrary to their belief, of the McAdams that the dissolving partnership had no such timber rights would not constitute a mutual mistake. (See *National Auto I. Co.* v. *Indus. Acc. Com.* (1938) 27 Cal.App.2d 225, 227-228 [80 P.2d 1024]; and cf. *Renshaw* v. *Happy Valley Water Co.* (1952) 114 Cal.App.2d 521, 524-525 [250 P.2d 612].) With respect to Ogletree the only evidence to support a finding of his belief of nonownership is in the McAdams' interpretation of the circumstances, and that was rejected by the trial court in the findings which it approved.

There was no error in the failure of the trial court to give specific answers to the McAdams' interrogatories.

---

[4]The court expressly rejected proposed counterfindings reading: "After being advised by the attorney and the title company that the timber on the 7/40's was not an asset of the partnership, Kelly McAdams eliminated that asset from consideration, treated it as not being an asset subject to distribution, and reached another agreement which modified the preceding agreement by conveying to Ogletrees the 160 acres in Section 6, Township 6." (See also fn. 2 above.)

## II

■ A further question posed by the disapproved requests for specific findings is, "On what date did the cause of action set forth in the supplemental and amended cross-complaint accrue?"

The court found, "The supplemental and amended cross-complaint is barred by the provisions of Section 338(4) of the Code of Civil Procedure."[5] That section bars an action for relief on the ground of fraud or mistake over three years after the cause of action accrued, with the proviso that the cause of action in such a case will not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake. The McAdams' claim of mistake was asserted in their answer and cross-complaint filed October 20, 1967. It may, therefore, be concluded that the court found that they discovered the mistake if any there was, prior to October 20, 1964. Any finding prior to that date would be of no avail to the McAdams. Moreover, their own admissions in their original and their amended cross-complaints show that they discovered and informed defendants of the mistake in 1963. The evidence reflects that in April or May 1963, the McAdams had been advised that the timber company's rights under the 1913 deed were of no present effect. There was no error in the court's failure to make a more specific finding concerning the accrual of the cause of action.

We reject McAdams' contention that the four-year period of section 343 of the Code of Civil Procedure is applicable because the nature of the right sued on is the recovery of an interest in an undisclosed partnership asset. The claim cannot be predicated on the original written partnership agreement without reformation for mistake, because the partnership not only has been dissolved, but the timber rights in questions, whatever their worth, were actually conveyed to the Ogletrees pursuant to that agreement. (See *Jefferson* v. *J. E. French Co.* (1960) 54 Cal.2d 717, 718-719 [7 Cal.Rptr. 899, 355 P.2d 643].)

## III

■ The McAdams contend the court erred in failing to find on their interrogatory concerning estoppel, which reads as follows: "Subsequent

[5]The court expressly rejected a proposed counterfinding reading: "No statute of limitations is applicable to bar the relief sought by cross-complainants."

to execution of the dissolution agreement of June 6, 1958, did any conduct of cross-defendants Ogletree, et al, cause McAdams to believe that they would be able to claim rights to the timber on the 7/40's without the necessity of bringing suit against Ogletree, et al?"

The court expressly found, "There is no conduct which estops cross-defendants from asserting Section 338(4) of the Code of Civil Procedure as a defense to the supplemental and amended cross-complaint."[6] Their objection is more accurately stated as a claim that the evidence fails to sustain the finding actually made by the court.

Ina May McAdams testified that she based her belief that her claim over the seven forty-acre parcels was not contested by the Ogletrees on a series of letters. Ina May wrote to her mother, her brother, Ben Ogletree, and her sisters, Louise Ogletree McElroy and Georgia Ogletree Ribar, stating: "While considering the 'bone-yard', we should also add the timber on the 7-40's, which apparently is owned by Simpson, and which was deducted from the amount of the timber, and not considered in the division of this ranch. That timber is owned jointly by us—50% each—that is, if it is not Simpson's. In case anything should be done by any of us to reclaim that timber, it is a 50-50 deal—so let's remember that when classifying property which others have claims on."

Ben replied on May 21, 1963, stating: "I certainly agree with the matter of the Simpson Timber. I do not recall the manner in which it was handled, but do know there was extensive discussion about it. The records will show what was done. I am sure there will be no trouble there. The main thing would be to get the timber back from Simpson if possible. Do you have any suggestions about that? We have title to the land and they should not be able to have all the timber growth forever. They have cut the timber that was reserved if we can prove it."

On May 17, 1963, Ina May wrote to Ben and the others as follows: "I talked to John Stokes about the Simpson timber . . . which belongs to all

---

[6]The court expressly rejected a proposed counterfinding reading: "Cross-defendants are estopped to assert any statute of limitations as a defense to the relief sought by cross-complainants."

of us. He will let me know what chance he thinks we have to get it back and I will let you know. He charges $20.00 per hour . . . and we find him really very reasonable in his time. So we can see what he can find out and I am assuming that you will be willing to pay your ½ of a preliminary check to see if we have a chance. You can advise me as to your pleasure as I felt from your letter that you would like to know whether we have a chance or not." On May 21, Ben replied, in part: "I cannot tell you we will pay Mr. Stokes anything without contacting everybody and getting their thoughts. This is quite a chore and I ask that you do not get us involved on my authority until I can go into it with everybody. I will do this if you want me to."

■ We recently had occasion to state with respect to estoppel, "[W]e note that its application required the establishment of four elements, to wit: '(1) that the party to be estopped must be apprised of the facts; (2) he must intend that his conduct will be acted upon, or act in such a manner that the party asserting the estoppel could reasonably believe that he intended that his conduct to be acted upon; (3) the party asserting the estoppel must be ignorant of the true state of the facts; and (4) he must rely upon the conduct to his injury. [Citation.]' (*Crestline Mobile Homes Mfg. Co.* v. *Pacific Finance Corp.,* 54 Cal.2d 773, 778 . . . .)" (*Schrader Iron Works, Inc.* v. *Lee, supra,* 26 Cal.App.3d 621, 636. See also *Strong* v. *County of Santa Cruz* (1975) 15 Cal.3d 720, 725 [125 Cal.Rptr. 896, 543 P.2d 264].)

■ In its intended decision the trial court stated: "There is no conduct which estops cross-defendants from asserting the statute of limitations. The letter from Ben Ogletree to Mrs. McAdams does not constitute such conduct. He obviously did not recall all of the facts when he wrote the letter; the letter itself points this out." We agree. Ben's statement that "I certainly agree with the matter of the Simpson Timber" is ambiguous without taking into account the immediately following language that "I do not recall the manner in which it was handled. . . . The records will show what was done." The language is susceptible of the inference that when he wrote the letter, he had not reviewed the matter, and did not remember whether the seven forty-acre parcels were included in the division or not. If so, then he was not apprised of the facts and could not have made any representations about the matter,

such as to mislead the appellants. The first element of estoppel is missing and the trial court did not err in determining that the respondents were not estopped to assert the statute of limitations.

The judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.