Filed 7/16/15  Young v. Bhakta CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DAVID YOUNG et al.,<br><br>    Plaintiffs, Cross-defendants and Respondents,<br><br>              v.<br><br>HITENDRA BHAKTA et al.,<br><br>    Defendants, Cross-complainants and Appellants. | G049734<br><br>(Super. Ct. No. 30-2012-00600613)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, David R. Chaffee, Judge.  Affirmed.

Law Offices of William B. Hanley and William B. Hanley for Defendants, Cross-complainants and Appellants.

Price, Crooke, Gary & Hammers, Stephen G. Hammers; The Law Offices of Joyce Young and Joyce Young for Plaintiffs, Cross-defendants and Respondents.

\*          \*          \*

This case involves the parties' rights and restrictions with regard to a "zero lot line" (ZLL), which artificially separates their properties but is not the true lot line. The northern exterior wall of the residence of plaintiffs and cross-defendants David Young and Elizabeth Young sits on the ZZL and is called the ZLL Wall. Their actual lot line is about eight feet north of the ZLL. Although they own the property between that and the ZLL, their neighbors, defendants and cross-complainants Hitendra Bhakta and Chitra Bhakta, have a rear yard easement over it for gardening and landscaping. A dispute arose involving this area after the Youngs began remodeling their home in 2009. Following a trial, the court issued a permanent injunction against the Bhaktas, awarded damages to the Youngs, and denied relief to the Bhaktas on their cross-complaint on the grounds of laches and waiver.

The Bhaktas challenge the court's orders: (1) prohibiting them from watering within two feet of the ZLL Wall, denying the Youngs and their agents access to the rear yard easement, and restoring the Bhaktas' planters and irrigation system to their original condition; (2) requiring the Bhaktas to reduce the grade of one of their planters and to remove a ficus tree located in it; and (3) awarding damages to the Youngs. The Bhaktas also contend the statement of decision did not sufficiently identify the factual and legal basis for the court's application of laches and waiver, and the evidence showed their action was not barred by those doctrines. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

The parties own single family homes on adjacent lots in a planned community with a homeowners' association (HOA). The lots overlap and the owners have reciprocal easements for the front and rear yards.

Two sets of CC&Rs burden the properties: one relates to the entire community (DCC&Rs) and the other is specific to the tract where the parties' lots are

2

located (TCC&Rs).  The HOA also provides Architectural Guidelines overseen by an Architectural Committee.

The TCC&Rs authorize the Bhaktas, as the dominant owners, to use their rear yard easement only for recreational and gardening purposes, which they may landscape subject to the Architectural Committee's approval.  (TCC&R 4.3.4.)  They may not plant or landscape in a manner that would "impair or otherwise threaten the structural integrity of any adjacent Residence."  (TCC&R 4.3.4.)  Nor may they "permit or suffer anything . . . to be done to [the ZLL] Wall which would tend to damage, alter or impair the structural integrity of such Wall.  Further, [they] shall not, under any circumstances, plant any tree, shrub or other landscaping, or build, erect or otherwise install any improvement of any kind within two feet . . . of the Z[LL] Wall which would unreasonably impede or interfere with the necessary maintenance and repairs to the Z[LL] Wall by the [Youngs], and impair the structural integrity of such Wall . . . ." (TCC&R 4.3.3.)  Additionally, "Soil shall not be retained against any existing wall unless the wall is designed for that purpose."  (Architectural Guideline 2.B.2.d.)

The Youngs own the ZLL Wall, as well as the rear wall, which extends from the ZLL Wall to the east.  The TCC&Rs require the Youngs, as the servient owners, to "paint, maintain, and repair the [ZLL] Wall," and provide them with an easement over the Bhaktas' rear yard easement for this purpose subject to 24 hours' notice to the Bhaktas.  (TCC&R 4.3.5.)  Without permission from the Architectural Committee, the Youngs may not "construct, install or erect any improvement in the Rear Yard Easement Area" (TCC&R 4.3.4), alter the ZLL Wall, or construct any wall or other structure (TCC&R 4.3.9; see DCC&R 8.03 [no construction, alteration, or modification of improvement absent Architectural Committee approval]; DCC&R 7.02(a) [restrictions for residential improvements].)  To obtain approval from the Architectural Committee, the Youngs had to have their neighbors sign a "'Neighbor Awareness Form.'"

In October 2009, the Youngs contracted with Blue Ribbon Design-Build (Blue Ribbon) to expand their home. The construction required removal of a portion of the rear wall in order to extend the ZLL Wall by approximately eight feet six inches in an easterly direction.

Mrs. Young discussed the intended remodel with Mrs. Bhakta and provided the Neighbor Awareness Form. Mrs. Bhakta signed the form, as did the Youngs' other neighbors. Mr. Bhakta was also aware of the form, which states, "My neighbors have seen the plans I am submitting for the Master Architectural Committee review . . . . If any neighbor has a concern, they should contact Merit Property Management in writing. Please note that neighbor objections do not in themselves cause denial of the plans but those concerns may[] be considered by the Architectural Committee." Neither Mr. nor Mrs. Bhakta contacted Merit Property Management in writing.

The Architectural Committee approved the construction plans submitted by Blue Ribbon in December 2009. The City of Irvine (city) approved the plans in early May 2010.

Preconstruction activities began about a week later. Plants in the Bhaktas' rear yard easement were removed to allow for a new utility and water line, to which the Bhaktas did not object. The repotted plants were placed in the Bhaktas' backyard and a six-foot safety fence erected behind them.

Mrs. Young took numerous photographs of the plants before they were removed. The photographs showed they had been growing within two feet of the ZLL Wall. They also revealed soil in the high planter had been placed against the Bhaktas' side of the rear wall.

When demolition of the interior of the ZLL Wall began (i.e., the inside of the Youngs' residence), water damage was discovered. Although the Bhaktas' sprinklers in this area were aimed at the ZLL Wall, no drains had been installed. The Youngs'

4

expert, Cathrene Glick, opined the Bhaktas' irrigation system had caused the damage and that the planters posed a continuing water intrusion problem for the Youngs' residence.

Upon being approached by Mrs. Young about the water intrusion, Mr. Bhakta denied responsibility and demanded his plants be returned to their original location. He refused to change the design of his planters. Mrs. Young took the issue to the HOA. In July 2010, the HOA sent the Mr. Bhakta a "Violation Notice" letter, asking "to schedule an on site meeting" with him to verify whether the planters in his backyard had soil retained against the walls. Mr. Bhakta admitted receiving this letter but could not remember if he ever met with the HOA. The Youngs paid $4,300 to remove and replace the damaged ZLL Wall.

A month after receiving the letter from the HOA, Mr. Bhakta pushed the safety fence against the ZLL Wall and hung a "'NO TRESPASSING. KEEP OUT'" sign on the fence. This caused the Youngs' construction to be delayed for several weeks. In early October 2010, the Youngs gave notice to the Bhaktas that the safety fence would be moved back and construction resumed shortly thereafter. The fence remained there until January 2011.

When the Youngs discovered the extension of their residence on the ZLL Wall would back up against the Bhaktas' high planter, an issue arose as to how to prevent future water intrusion into their home. The Youngs followed Blue Ribbons' recommendation to add a stem wall on their side of the ZLL, at a cost of $1,200. They paid an additional $200 to waterproof the stem wall. A pad footing in the flat landscaping area was also placed between the utility line and the ZLL Wall.

The HOA and the city approved the plans for the stem wall. The Youngs prepared another Neighbor Awareness Form, but the Bhaktas refused to open their door.

After new concrete was poured, the Youngs saw water intrusion at the "cold joint" between the old and new slabs and notified Blue Ribbon. When Blue Ribbon would not remedy the problem, the Youngs refused to remit the final payment. Blue

5

Ribbon demanded arbitration and the Youngs cross-complained against them for construction defects. The Youngs' cross-complaint is not at issue in this appeal.

During arbitration, Glick requested soil samples from the rear yard easement to determine whether that "could be a potential entrance of water beneath the slab." Although Blue Ribbon gave five days, rather than the 24 hours, of notice required under the CC&Rs, the Bhaktas denied permission for the Youngs and their experts to enter the rear yard easement until the Bhaktas' planters were restored to their pre-construction condition.

The Youngs filed a complaint for injunctive relief and damages against the Bhaktas, along with an ex parte request for a temporary restraining order and OSC re preliminary injunction. The court granted the requested relief and ordered the Bhaktas to grant the Youngs and their experts entry onto the easement for testing "or any other use consistent with the CC&Rs."

After obtaining their injunction, the Youngs amended their complaint to add claims for wrongful discharge of surface waters, nuisance, injury to real property, and unreasonable use of easement. In December 2012, the Bhaktas cross-complained, seeking, in part, to have the Youngs restore the Bhaktas' irrigation and landscaping to pre-construction conditions and $250,000 in damages.

During the bench trial, Glick testified that the seepage of water at the cold joint was due both to inadequate waterproofing on the stem wall and the Bhaktas' retention of soil against that wall. But although construction defects contributed to the cold joint issue, they were unrelated to the damage to the wall, which was caused by the soil placed against it and lack of proper drainage.

The court awarded the Youngs damages and permanently enjoined the Bhaktas from, inter alia, watering within two feet of the ZLL Wall, denying the Youngs and their agents access to the rear yard easement, restoring the Bhaktas planters in the rear yard easement to their preconstruction state. It also ordered the Bhaktas to reduce

6

the grade of their high planter, remove a ficus tree, and restore drainage in their rear yard to working condition. It found the Bhaktas' cross-claims barred by waiver and laches, and their evidence of disruption, nuisance, and valuation "unconvincing." An amended judgment was entered in April 2014.

DISCUSSION

*1. Grant of Injunctive Relief to the Youngs*

The Bhaktas argue the court improperly granted permanent injunctive relief to the Youngs. We disagree.

Both sets of CC&Rs authorized the Youngs to seek, and the court to grant, damages and injunctive relief for their violations. (TCC&R recital B [incorporating DCC&Rs], 6.1 ["Breach of any of the easements, covenants, conditions or restrictions contained in this Declaration and the continuation of any such breach may be enjoined, abated, or remedied by appropriate legal or equitable proceedings"]; DCC&R 12.05(a) ["any Owner . . . shall have the right to enforce any or all of the provisions of the Restrictions against any Lot. . . . Such right shall include an action for damages, as well as an action to enjoin any violation of the Restrictions"].)

"'A permanent injunction is a determination on the merits that a plaintiff has prevailed on a cause of action . . . against a defendant and that equitable relief is appropriate.' [Citation.] The grant or denial of a permanent injunction rests within the trial court's sound discretion and will not be disturbed on appeal absent a showing of a clear abuse of discretion. [Citation.] The exercise of discretion must be supported by the evidence and, 'to the extent the trial court had to review the evidence to resolve disputed factual issues, and draw inferences from the presented facts, [we] review such factual findings under a substantial evidence standard.' [Citation.] We resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge all

7

reasonable inferences to support the trial court's order." (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 390.)

We review de novo a trial court's interpretation of CC&Rs where, as here, it does not turn on the credibility of extrinsic evidence. (*Harvey v. The Landing Homeowners Assn.* (2008) 162 Cal.App.4th 809, 817.) If clear and explicit, the CC&R language governs, with the words interpreted in their ordinary and popular sense. But if the CC&Rs are ambiguous because two different reasonable interpretations are possible, we interpret them "to make them lawful, operative, definite, reasonable and capable of being carried into effect, . . . avoid[ing] an interpretation that would make them harsh, unjust or inequitable." (*Id.* at pp. 817-818.)

Under these standards, we conclude no error occurred in the court's rulings.

### 1.1 Watering Distance Restriction

The Bhaktas argue the court erred in enjoining them from watering within two feet of the ZLL Wall because the CC&Rs do not place such a limitation on their use of the rear yard easement. That may be, but TCC&R 4.3.3 precludes the Bhaktas from "*permit[ing] or suffer[ing] anything . . . to be done to [the ZLL] Wall which would tend to damage, alter or impair the structural integrity of such Wall.*" (Italics added.) The court found "the Bhaktas' maintenance of their plants and irrigation . . . caused damage to the Youngs' property," due to sprinklers being aimed at the ZLL Wall, the lack of proper a drainage system, and leaks in the Bhaktas' irrigation system. Based on these findings, which are supported by the record, the court could have reasonably concluded that by watering within two feet of the ZLL Wall, the Bhaktas were permitting moisture to seep into the ZLL Wall, which in turn damaged its structural integrity. The court thus did not abuse its discretion in prohibiting such watering.

8

*1.2  Denying Entry Onto the Rear Yard Easement to the Youngs*

The Bhaktas contend the court erroneously expanded the terms of the CC&Rs by permanently enjoining them from denying access or entrance onto their rear yard easement to the Youngs and their agents.  They argue TCC&R 4.3.5 only permits the Youngs to enter the easement to "'paint, maintain and repair the Z[LL] Wall and [their] residence.'"

But at the time the Bhaktas refused them entry to take the soil sample, the Youngs *were* attempting to repair and maintain their residence and the ZLL Wall by seeking to ascertain the source of the seepage at the cold joint in order to prevent further water damage.  Also, the Youngs had authority to enter the easement under TCC&R 4.3.11, which provided them an easement over the rear yard easement "to accommodate the drainage system" given the parties "mutual[] respons[ibility] to maintain and preserve said system in operating condition to ensure proper drainage on, over and across" that area.  Given this drainage easement, we reject the Bhaktas' claim that allowing the Youngs to enter the easement "to install an irrigation system" (including drainage) violated the CC&Rs.

Moreover, TCC&R 4.3.5 does not contain the restrictions proposed by the Bhaktas.  It states, the Youngs "shall have an easement" for the purpose of painting, maintaining, or repairing the ZLL Wall/residence, not that it is limited to such.  In fact, both sets of CC&Rs allow for the alteration of the ZLL Wall and other construction or improvement, as long as it is first approved by the Architectural Committee.  (TCC&Rs 4.3.4, 4.3.9; DCC&R 8.03.)  The record shows the Youngs obtained such approval, contrary to the Bhaktas' contention.  No CC&R or rule of law requires the Youngs to also provide the Bhaktas copies of the plans or the schedule for construction.

Further, we agree with the court that any violation of the requirement that the Youngs use their "best effort[] to minimize the duration of the work and the inconvenience to" the Bhaktas was caused by the Bhaktas' own conduct in "causing

9

delay after delay after delay in what should have been a fairly quick project . . . which could have been done months earlier but for [the Bhaktas'] self-help and interference." The record bears this out.

### 1.3 Restoration of Planters and Drainage

The Bhaktas assert the court erred in precluding them from restoring that part of the rear yard easement area containing their low landscaping area and high and low planters to their pre-May 2010 state. They argue the Youngs had never before challenged their planters or irrigation system, which had been in place since 1989. But the Youngs had no reason to do so before they discovered damage to their residence/ZLL Wall.

And, regardless of how long the planters had been there, they were in breach of the CC&Rs, as the court found: "The evidence demonstrated that the Bhaktas did not build the high planter in compliance with the requirements of the HOA. Soil was filled into the planter and retained up against the rear wall on the Youngs' property in violation of the Architectural Guidelines. There was a sink effect, where the water pushed down and out through the joints in the rear wall, which over the years caused the rear-wall to fail. [¶] The evidence demonstrated that the Bhaktas failed to properly maintain the [f]icus tree in the [h]igh [p]lanter. Its roots caused damage to the Youngs' rear wall, in contravention of Section 7.03 of the [DCC&Rs]. The Court notes that the [f]icus was not identified in the original plan presented by the Bhaktas to the HOA's Architectural Committee for approval." Defendants do not contest these findings, which, in any event, are supported by the record. No abuse of discretion has been shown.

The Bhaktas maintain the court "actually 'permanently enjoined' [them] from . . . '[r]estor[ing] any and all drainage in their rear yard to working condition[.]'" The opposite is true. The permanent injunction required them to restore the drainage.

10

*2. Damages*

The Bhaktas contend the court erred in awarding the Youngs $5,700 to "'fix the damage to the Z[LL] Wall and rear wall, caused by the Bhaktas' maintenance of [their] plants and irrigation in the Rear Easement Area.'" According to the Bhaktas, the $5,700 was spent, not for repairs, but in connection with the Youngs' decision "to extend the Z[LL] Wall of their residence so that it would back up against the upper planter." On the contrary, the record shows the Youngs spent $4,300 to remove and replace the ZLL Wall damaged by water seeping from the Bhaktas' property, as testified to by Glick, $1,200 to construct the stem wall and another $200 for waterproofing in order prevent further water intrusion. The evidence supports the court's finding that the Youngs' damages stemmed from their need to repair the ZLL Wall, and we will not reweigh the evidence.

*3. Waiver and Laches*

The parties disagree on the appropriate standard of review for waiver, with the Bhaktas asserting a de novo standard applies "because there is no disputed evidence" and the Youngs contending the correct standard is substantial evidence. We agree with the Youngs because the facts are disputed. (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 [waiver is generally a question of fact unless facts are undisputed and only one inference may reasonably be drawn].)

"Waiver is the intentional relinquishment of a known right." (*Branson v. Sharp Healthcare, Inc.* (2011) 193 Cal.App.4th 1467, 1478.) The Bhaktas argue the court's written statement of facts did not provide the required "factual and legal findings to support the conclusion that [they] intentionally relinquished a known right to pursue any claim asserted in their [c]ross-complaint against the Young[s]." We disagree.

A statement of decision need only disclose the court's legal and factual basis for ascertaining the ultimate facts and material issues in the case. (*Ermoian v.*

11

*Desert Hospital* (2007) 152 Cal.App.4th 475, 500.) "[T]he findings of ultimate facts indicate by necessary intendment the findings on all intermediate facts necessary to sustain them [citation], and where this is so, the court may reject a request for specific findings that in reality is a request for a statement of evidentiary facts." (*McAdams v. McElroy* (1976) 62 Cal.App.3d 985, 996.)

Here, the court's statement of decision identifies the following intermediate facts: Before obtaining the Architectural Committee's approval, the Youngs provided the plans and the Neighbor Notification form to the Bhaktas, which they reviewed. The form placed the Bhaktas on notice that any concerns about the construction project should be made in writing to the HOA's management company but no writing was ever sent. "Not until demolition and construction were underway did [the Bhaktas] register any protest, and then only to [the Youngs] and their contractor. [The Bhaktas] failed to take the matter to the HOA initially, failed to take the matter to the HOA at the early stages of the demolition or construction, failed to take the matter to the HOA at any time ever, and failed to seek judicial intervention at the earliest opportunity. [¶] Instead, the [Bhaktas] resorted to threats, intimidation of [the Youngs] and their contractor, and self-help by way of moving the contractor's safety fence and posting 'no trespassing' signs upon the [e]asement Area (the Youngs' property)." "Much of the construction activity in dispute took place in 2010. The instant action was filed the [the Youngs] on October 15, 2012. Although still unfinished due to [the Youngs'] ongoing dispute . . . with Blue Ribbon, the vast majority of the construction has been completed for at least two years. [¶] Regardless, [the Bhaktas] filed their [c]ross-[c]omplaint on December 18, 2012. As to this, it is the finding of the court that [the Bhaktas], having failed to seek judicial relief throughout the almost year-long construction period, and having waited two years beyond, waived any claim for injunctive relief and/or damages." In short, the Bhaktas knew of their right to bring their claims to the attention of the HOA and the courts—Mr. Bhakta in fact admitted he knew he had "every right to pursue [his] rights to

12

enforce . . . the CC&Rs"—yet intentionally took no action at the time, instead waiting until most of the construction had been completed.

The statement of decision sufficiently provides the legal and factual bases for the court's finding of waiver. Because its findings are supported by substantial evidence based in the record, we disregard the Bhaktas' citation of facts purportedly showing to the contrary. Arguing such evidence "supports the fact that there was no waiver" constitutes nothing more than a request that we reweigh the evidence, which we may not do in reviewing a finding of waiver for substantial evidence based on disputed facts.

Given our conclusion on waiver, we need not address the Bhaktas' claims regarding laches and the applicable statute of limitations for CC&R violations.

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

ARONSON, J.

FYBEL, J.