[Civ. No. 37899. First Dist., Div. One. Sept. 16, 1976.]

RICHARD D. WILSON, Plaintiff and Appellant, v.
SAN FRANCISCO FEDERAL SAVINGS AND LOAN
ASSOCIATION, Defendant and Respondent.

2

**COUNSEL**

Mamakos & Mallick, Lewton & McGuinn and Lynn S. Carman for Plaintiff and Appellant.

Charles D. Sooy and C. Darrell Sooy for Defendant and Respondent.

**OPINION**

**ELKINGTON, J.**—The instant appeal is taken by plaintiff Wilson from several orders of the superior court. One, an order decertifying his action against San Francisco Federal Savings and Loan Association ("San Francisco Federal") as a class action, is appealable. (*Daar* v. *Yellow Cab Co.,* 67 Cal.2d 695, 699 [63 Cal.Rptr. 724, 433 P.2d 732]; *Eisen* v. *Carlisle & Jacquelin,* 370 F.2d 119, 120 [cert. den., 386 U.S. 1035 (18 L.Ed.2d 598, 87 S.Ct. 1487)].) The others are not, and insofar as the appeal is taken from them, it will be dismissed. (See *Degnan* v. *Morrow,* 2 Cal.App.3d 358, 362 [82 Cal.Rptr. 557]; *Woodman* v. *Ackerman,* 249 Cal.App.2d 644, 646-647 [57 Cal.Rptr. 687].)

We proceed to consider the appeal from the order decertifying the action as a class action.

The complaint was filed by plaintiff Wilson "on behalf of himself and of all persons similarly situated" (hereafter sometimes the "class"). Its allegations may reasonably, and conveniently, be reduced to the following.

San Francisco Federal had made at least 50,000 loans to members of the class on the security of deeds of trust on real property. The deeds of trust provided that, in addition to interest and principal becoming due, the trustor borrowers would periodically pay to San Francisco Federal sums, called "impound funds," which "shall be held by [San Francisco Federal] in trust to pay [insurance] premium or premiums, taxes and assessments [in relation to the real property security] . . ., or may be credited directly to interest and principal due under the terms of the note secured hereby, and upon payment by Beneficiary of taxes, assessments and insurance premiums, the amount so paid shall be charged to the principal due upon the note secured hereby . . . ." (There were four forms of deeds of trust, with substantially similar provisions, used by San Francisco Federal, all of which are the subject of the action. The parties, and therefore we, make no distinction between them.) "[I]n each case [San Francisco Federal] elected not to credit impound funds received to interest or principal and thereby elected instead to receive the impound funds in trust for the purpose of paying premiums, taxes and assessments on behalf of the class." The impound funds so paid amounted to "$30 million annually" and, before their use for the designated purposes, they were loaned out at interest by San Francisco Federal for its own account and profit.

The complaint, on behalf of the class, sought an accounting of, and judgment for, the amounts by which San Francisco Federal had profited from the impound funds. The theory on which plaintiff relied was that a trust or fiduciary relationship existed between San Francisco Federal and the class, as a legal result of which they, the class, were entitled to all interest or profit earned on the impound funds.

■ The basic principles of our concern on the appeal are set out in *Vasquez* v. *Superior Court,* 4 Cal.3d 800, 809-810 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513], where the court iterated that two require-

ments must be met to sustain a class action. In its ensuing discussion the court stated:

"The first is existence of an ascertainable class, and the second is a well-defined community of interest in the questions of law and fact involved. ▆ [¶] As to the necessity for an ascertainable class, the right of each individual to recover may not be based on a separate set of facts applicable only to him. ▆ [¶] The requirement of a community of interest does not depend upon an identical recovery, and the fact that each member of the class must prove his separate claim to a portion of any recovery by the class is only one factor to be considered in determining whether a class action is proper. ▆ The mere fact that separate transactions are involved does not of itself preclude a finding of the requisite community of interest so long as every member of the alleged class would not be required to litigate numerous and substantial questions to determine his individual right to recover subsequent to the rendering of any class judgment which determined in plaintiffs' favor whatever questions were common to the class. ▆ [¶] Substantial benefits both to the litigants and to the court should be found before the imposition of a judgment binding on absent parties can be justified, and the determination of the question whether a class action is appropriate will depend upon whether the common questions are sufficiently pervasive to permit adjudication in a class action rather than in a multiplicity of suits." (Fn. omitted.)

▆ The issue before the superior court, according to *Vasquez* v. *Superior Court, supra,* page 809, was whether or not, on the evidentiary showing made, *each member of the class* would "be required to litigate numerous and substantial questions to determine his individual right to recover subsequent to the rendering of any class judgment which determined in plaintiffs' favor whatever questions were common to the class."

We consider the evidence presented on *this issue.*

In support of its position San Francisco Federal offered "extrinsic evidence," purportedly to establish *the parties' intent and understanding.*\* It appears in a sworn declaration of one of its officers.

---

\*We are not asked to, nor do we, pass upon the basic admissibility of this extrinsic evidence which was admitted and considered without objection at the trial. At least ordinarily, extrinsic evidence is properly admitted to establish the contracting parties'

It is first alleged that: "The sole understanding and agreement between defendant and its borrowers with respect to the tax and insurance payments was that those borrowers who requested or were required to do so would pay one-twelfth of the estimated annual taxes and insurance premium with their monthly installment of principal and interest, and that defendant would account for and undertake to pay the taxes and insurance premiums when they became due." But this recital fails of its purpose. Contrary to the argument of diversity of intent and understanding among the class or the class and San Francisco Federal, it affirms that such intent and understanding was uniform as to all members of the class.

The declaration then purports, in many different ways, to state the *unilateral intent* of San Francisco Federal throughout the many loan transactions. The following is typical: "Defendant never intended to receive or hold tax or insurance payments as a trustee or 'in trust' or as a special deposit." It is patent that this parol or extrinsic evidence has no tendency whatever to establish the intent or understanding *of the contracting parties,* the issue then and now before the court.

Finally, the declarant alleged that neither he, nor any other officer or employee of San Francisco Federal to his knowledge, had "ever received any communication from any borrower, oral or written," expressing such borrower's intent or understanding with respect to the impound funds. This also has no logical tendency to establish different intent or understanding among members of the class.

There being no relevant or material extrinsic evidence on the issue, the intent and understanding of the parties may be derived only from their written agreement. "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (Civ. Code, § 1638.) "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; . . ." (Civ. Code, § 1639.)

The evidence accordingly did not establish that the intent and understanding of the parties differed from loan to loan. Instead that

intent and understanding, where necessary to resolve uncertainty (*McCullough* v. *Jones,* 11 Cal.App.3d 270, 274 [89 Cal.Rptr. 646]), or to establish a consistent collateral agreement (*Masterson* v. *Sine,* 68 Cal.2d 222 [65 Cal.Rptr. 545, 436 P.2d 561]), or to establish an interpretation to which the writing is reasonably susceptible (*Tahoe National Bank* v. *Phillips,* 4 Cal.3d 11, 22 [92 Cal.Rptr. 704, 480 P.2d 320]).

intent or understanding must be determined by judicial interpretation of the parties' written agreement.

We observe further that San Francisco Federal's deeds of trust must reasonably be considered contracts of adhesion. ■ "The term signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." (*Neal* v. *State Farm Ins. Cos.*, 188 Cal.App.2d 690, 694 [10 Cal.Rptr. 781].) They are sometimes defined as "a standardized contract prepared entirely by one party to the transaction for the acceptance of the other; such a contract, due to the disparity in bargaining power between the draftsman and the second party, must be accepted or rejected by the second party on a 'take it or leave it' basis, without opportunity for bargaining and under such conditions that the 'adherer' cannot obtain the desired product or service save by acquiescing in the form agreement." (*Steven* v. *Fidelity & Casualty Co.*, 58 Cal.2d 862, 882 [27 Cal.Rptr. 172, 377 P.2d 284].) The definition patently describes the deeds of trust, and the impound funds provisions, here at issue.

The state's high court in *La Sala* v. *American Sav. & Loan Assn.*, 5 Cal.3d 864, 877 [97 Cal.Rptr. 849, 489 P.2d 1113], observed that: "Controversies involving widely used contracts of adhesion present ideal cases for class adjudication; the contracts are uniform, the same principles of interpretation apply to each contract, and all members of the class will share a common interest in the interpretation of an agreement to which each is a party"; and that in a class action, if the "evidence discloses that the trust deed [subject of the action] is adhesive as to virtually all members of the class, plaintiffs will not need to elicit individual testimony from each borrower."

■ It follows from what we have said, that the right of each member of the class will "not be based on a separate set of facts applicable only to him," and that the "common questions are sufficiently pervasive to permit adjudication in a class action rather than in a multiplicity of suits." (See *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 809, 810.) The order decertifying the action as a class action was therefore erroneous.

Our decision on this issue does no more than hold, as a matter of law, that the entirety of the evidence presented in the superior court establishes an ascertainable class with a "well-defined community of

interest in the questions of law and fact involved," and where "the right of each individual to recover [will] not be based on a separate set of facts applicable only to him." (See *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 809.) We have not interpreted the impound funds provision, nor have we otherwise passed upon the merits of the class action, or the rights and obligations of its parties. Nor, except to hold that the action must be certified as a class action, do we purport to control or limit the acts, rulings or discretion of the superior court upon remand.

No merit is seen in the additional contention of San Francisco Federal that the class members have another and equally "effective remedy," since in separate successful actions each would be entitled to his attorney's fees, by operation of Civil Code section 1717. Entitlement to attorney fees is a minor consideration in class actions. The function of the class action is to avoid the burden of "innumerable appearances by individual plaintiffs. . . . upon the class and upon the court." (*La Sala* v. *American Sav. & Loan Assn., supra,* 5 Cal.3d 864, 873.) Nothing is seen in *Ratner* v. *Chemical Bank New York Trust Company,* 54 F.R.D. 412, calling for a different conclusion.

The order decertifying the action as a class action is reversed and the cause is remanded to the superior court for further proceedings. The appeal, insofar as it relates to other orders which we find to be nonappealable, is dismissed. Plaintiff Wilson will recover his costs of appeal.

Molinari, P. J., and Sims, J., concurred.

A petition for a rehearing was denied October 8, 1976, and respondent's petition for a hearing by the Supreme Court was denied November 12, 1976.