[No. A065701. First Dist., Div. Three. June 14, 1996.]

CHARLES R. B. KIRK, Plaintiff and Appellant, v.
SOURCE ONE MORTGAGE SERVICES CORPORATION, Defendant
and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

COUNSEL

Alborg & Dictor, Cary L. Dictor and Samuel E. Goldstein for Plaintiff and Appellant.

Musick, Peeler & Garrett, Mark H. Van Brussel and James T. Cahalan for Defendant and Appellant.

OPINION

CORRIGAN, Acting P. J.—Source One Mortgage Services Corporation (Source One) appeals from a jury verdict awarding compensatory and punitive damages to Charles R. B. Kirk for breach of his rights regarding an impound account created under the terms of Civil Code section 2954,[1] together with his claims for breach of contract, libel, and interference with contract. In the published portion of this opinion, we hold section 2954 requires that voluntary mortgage impound accounts created under its terms be terminable at the request of the borrower. Thus, the trial court properly directed a verdict for Kirk on his claim that Source One violated section 2954 when it required him to sign a waiver form containing terms inconsistent with the statute before it would terminate his account. In the unpublished portion of this opinion, we address Source One's other claims of error, as well as Kirk's arguments on cross-appeal. We reverse and remand for retrial on the claims of libel, injunctive relief, and damages.

*Factual and Procedural Background*

In January 1987, Kirk refinanced his single-family residence with IMCO Realty Services, Inc. (IMCO). He agreed to maintain an impound account. Under the agreement, Kirk would make monthly payments to the lender to cover both property tax and hazard insurance premiums on the property, which were then paid by the lender when they became due. Such an account

---

[1]All further statutory references are to the Civil Code unless otherwise indicated.

is regulated by section 2954.[2] In July 1989, Kirk's loan was one of approximately 30,000 sold by IMCO to Source One, which serviced it on behalf of the Federal National Mortgage Association (Fannie Mae).

In June 1990, after receiving a notice from Source One that his insurance impound payment would be increased because of an increase in policy premiums, Kirk decided to shop for less expensive insurance and made a written request to Source One to cancel only the insurance payment to the impound account. A six-month dispute followed, during which Source One sent Kirk various preforeclosure collection notices. In January 1991, Source One's insurance department advised Kirk that a review of his file indicated he did not have an insurance impound account, and his monthly payment was therefore reduced.

In March 1991, Kirk decided to cancel the tax payment to the impound account on his mortgage and so advised Source One in writing. Source One responded that it would grant his request for an escrow waiver,[3] provided that he reimburse a small negative balance in the account and sign an "escrow agreement form letter." This form letter stated that in consideration of Source One's waiver of its normal requirement of impound accounts, the undersigned promises to pay his own property taxes and insurance premiums. It further provided that Source One retained the right to reinstate an impound if Kirk failed to pay his taxes, insurance premiums, or monthly mortgage payments when due.[4]

---

[2]Section 2954 provides in pertinent part: "(a) No impound . . . account for payment of taxes . . . insurance premiums or other purposes . . . shall be required as a condition of a real property . . . loan secured by . . . a single-family, owner-occupied dwelling, except: (1) where required by a state or federal regulatory authority; or (2) where a loan is made, guaranteed, or insured by a state or federal governmental lending or insuring agency; or (3) upon a failure of the . . . borrower to pay two consecutive tax installments on the property prior to the delinquency date for such payments; or (4) where the original principal amount of such a loan is (i) 90 percent or more of the sale price . . . or is (ii) 90 percent or more of the appraised value of the property securing the loan; or (5) whenever the combined principal amount of all loans secured by the real property exceeds 80 percent of the appraised value . . . . Nothing contained in this section shall preclude establishment of such an account on terms mutually agreeable to the parties to the loan, if, prior to the execution of the loan . . . the . . . lender has furnished to the . . . borrower a statement in writing . . . to the effect that the establishment of such an account shall not be required as a condition to the execution of the loan . . . and further, stating whether or not interest will be paid on the funds in such an account."

[3]The parties both state that, in other jurisdictions, tax impound accounts are commonly called escrow accounts. The terms, as used here, are synonymous.

[4]Source One's cover letter also contained the following paragraph: "Please be advised that the decision to waive escrow does not indicate a change in the escrow clause of the mortgage. [Source One] has merely chosen not to exercise their option to collect escrow, and reserves

Kirk began deducting the tax impound from his monthly payments. He wrote Source One expressing his view that the form letter gave Source One rights it did not have under the original mortgage and requesting documentation of an impound agreement.[5] Kirk was paying his own tax and insurance obligations directly. Nevertheless, Source One sent him late charge and delinquent mortgage notices, treating his monthly payments of principal and interest as "short" because they did not contain the tax impound amount. Kirk then added the impound charge to his monthly payment to avoid default but informed Source One their demand for payment violated section 2954 and that he was paying under protest.

In August 1991, Source One informed Kirk that his monthly payments would be increased by $20.74 to cover anticipated tax payments. Kirk continued to pay the former amount, and Source One again began sending him notices of late charges, delinquency, and mortgage default. Source One initially held his payments "in trust" while awaiting the additional $20.74, then began returning his monthly payments with notices that the loan was in default and subject to foreclosure. In February 1992, Kirk wrote Source One a lengthy letter, reviewing in detail the dispute over the impound account and advising that he had the right to terminate his impound account at any time under section 2954. Source One did not respond to this letter but continued to send default notices and return his payments.[6] Source One also reported the loan as delinquent to three national credit bureaus[7] and recorded a notice of default on the property. Kirk then retained a lawyer and reinstated his loan. Kirk made the full requested monthly payments under protest.

In November 1992, Kirk filed a complaint against Source One, asserting claims for violation of section 2954, breach of contract, unfair business practices, libel, and interference with contract. Source One cancelled Kirk's tax impound account in June 1993 and issued him a check for the surplus in the account.

At trial, Source One sought to introduce a sample of the "Impound Account Authorization" form (authorization form) that it argued had been

---

the right to review your records in the future for reinstatement of escrow collection if the situation warrants such action."

[5]Source One responded by sending him a copy of his deed of trust, a standard industry form, which contained the following language: "Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due . . . a sum . . . equal to one-twelfth of: (a) yearly taxes and assessments . . . (c) yearly hazard insurance premiums . . . ."

[6]Kirk's impound account carried a surplus, because he was paying his own taxes and insurance.

[7]A Source One automation analyst testified that Fannie Mae regulations required them to report loans that are 90 days or more delinquent.

part of Kirk's file but was now missing. The trial court ruled the form inadmissible for lack of adequate foundation and instructed the jury that Source One had violated section 2954 and breached its contract with Kirk. The jury found Source One liable for interference with contract and libel. It awarded compensatory damages of $171,500 and punitive damages of $750,000. Following a posttrial hearing, the trial court denied Kirk injunctive relief on his unfair business practices claim and entered judgment for Source One on that cause of action. Source One's motion for a new trial was conditionally granted. The court ruled the motion would be denied if Kirk consented to a remittitur of the compensatory damages to $38,217, and Kirk did so. Source One appealed, and Kirk cross-appealed from the denial of injunctive relief and the remittitur.

## Discussion

### I. Civil Code Section 2954

Section 2954, subdivision (a) restricts the circumstances under which a mortgage lender may require an impound account as a condition of a secured loan for a single-family, owner-occupied dwelling. It allows a lender to require such an account only under specifically delineated circumstances.[8] The evidence is undisputed that Kirk's loan was not subject to a mandatory account under any of the five criteria enumerated in the statute.

Section 2954, subdivision (a) also provides, however, that "Nothing contained in this section shall preclude establishment of such an account on terms mutually agreeable to the parties to the loan, if, prior to the execution of the loan . . . the . . . lender has furnished to the . . . borrower a statement in writing . . . to the effect that the establishment of such an account shall not be required as a condition to the execution of the loan . . . and further, stating whether or not interest will be paid on the funds in such an account." ▮ Source One maintains that the missing authorization form contained the disclosures required by section 2954 and that Kirk agreed to a mandatory, permanent impound account, terminable only with Source One's permission.[9]

Under the heading "IMPOUND ACCOUNT AUTHORIZATION," the form provided, in pertinent part, as follows: "The establishment of an impound account is optional . . . . [¶] Lender, if authorized by this form, will collect

---

[8]See footnote 2, *ante.*

[9]Source One refers to the boilerplate language in Kirk's deed of trust, quoted in footnote 5, *ante.*

along with your regularly scheduled monthly principal and interest payment, impound deposits for placement in an IMPOUND ACCOUNT (the ACCOUNT). . . . [¶] Interest on impound accounts will be paid in accordance with State law, or if no applicable State law exists, at the option of IMCO REALTY SERVICES, INC." Two boxes were provided below, allowing the borrower to choose "IMPOUNDS" or "NO IMPOUNDS" by dating and signing in the relevant box. There was no signature on the sample form.

The evidence was in conflict whether Kirk ever signed such an authorization form. Kirk testified he had agreed orally to a voluntary, terminable impound account. The IMCO employee who closed the loan testified that she would not have done so without confirming that the form was in the file and that a checklist from Kirk's file showed it contained such a form. The trial court admitted the employee's testimony and the checklist, but excluded the form because it was not properly authenticated and the proffered document itself had never been in Kirk's file.

Even assuming, arguendo, that Source One's proffered form contained the necessary disclosures and that Kirk had signed such a form, the form itself makes no reference to the duration of the account or method of termination.[10] Having examined the language and legislative history of section 2954, as well as evidence of Source One's own practices and those of the California lending industry, we conclude that voluntary impound accounts created under section 2954 must be terminable at the request of the borrower when the parties have not specifically agreed otherwise.[11]

Section 2954, subdivision (a) states clearly that "No impound . . . account . . . shall be required . . ." unless one of the listed criteria is met. Merely because a borrower initially agrees to an impound account does not empower the lender to require its continuation without the borrower's

---

[10]Nor can Source One rely on the boilerplate language of the deed of trust, which provides: "Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender . . . [monthly impound payments] . . . ." The applicable law here is section 2954, which makes voluntary impound accounts terminable by the borrower, as we explain below.

[11]We need not decide whether the borrower might contract away his right to terminate a voluntary impound account, because there is no evidence Kirk did so here. Source One also argues that section 2954, subdivision (a)'s later provision that an impound account "established in violation of this subdivision is voidable, at the option of the . . . borrower . . ." implies that an account established in conformance with the statute is not voidable. Such an analysis fails to acknowledge the legislative history of this particular provision. A proposed amendment to section 2954 provided that any impound account established in violation of section 2954 would be void. Before passage, this proposal was amended to make such accounts voidable rather than void. (Sen. Amend. to Sen. Bill No. 1748 (1973-1974 Reg. Sess.) Apr. 30, 1974; Stats. 1974, ch. 389, § 1, pp. 966-967.)

continued consent, unless the loan later falls within one of the five mandatory categories specified in the statute.[12] The legislative history of section 2954, subdivision (a) also confirms its purpose generally to prohibit lenders from requiring impound accounts as a condition of a loan. The California Savings and Loan League wrote to the Governor supporting the legislation, noting the legislation ". . . would make impound accounts available on a voluntary basis . . . ." (Letter From California Savings and Loan League to Governor Reagan re: Assem. Bill No. 1514 (1973-1974 Reg. Sess.) Sept. 25, 1973.) The California Bankers Association also supported the bill, noting that it "prevents the borrower from being coerced into something he does not want but preserves his freedom of choice."[13] (Letter From California Bankers Association to Governor Reagan re: Assem. Bill No. 1514 (1973-1974 Reg. Sess.) Sept. 20, 1973.)

This court has held that remedial legislation intended to protect consumers should be construed liberally to implement its purpose. (*Kwan v. Mercedes-Benz of North America, Inc.* (1994) 23 Cal.App.4th 174, 184 [28 Cal.Rptr.2d 371].) Although neither section 2954 nor its legislative history makes specific reference to the closing of an impound account, the clear intent of the statute to protect borrowers from mandatory impound accounts compels the conclusion that a voluntary account must remain voluntary and can be closed when the borrower so chooses, unless it has become mandatory under the criteria set out in section 2954. In order to hold to the contrary, we would have to conclude the Legislature took pains to give consumers a right to refuse at the outset but made their decision irrevocable. Under this interpretation, borrowers are given the right to withhold consent, but once consent is given, they are deprived of the right to change their mind. There is nothing in the legislative history to support such a conclusion.[14]

---

[12]An impound account that was originally voluntary might become mandatory under the statute, for example, if the borrower failed to pay two consecutive tax payments on the property, or if the borrower had secured additional loans against the property, creating an indebtedness of more than 80 percent of the appraised value. (§ 2954, subd. (a)(3), (5).) As noted above, we do not decide whether the statute would permit a borrower to contract away his right to terminate a voluntary impound account, as that question is not presented on these facts.

[13]This concern to preserve the borrower's options is reflected in the specific statutory language allowing for the creation of such accounts after the required disclosures.

[14]Source One argues, by analogy to section 2954.7, that if the Legislature wanted to regulate the termination of impound accounts it would have done so explicitly. That section allows the borrower to cancel mortgage insurance under certain circumstances, when the insurance had been required as a condition of the loan, thus overriding the parties' contract. No such conclusion follows here, because section 2954 explicitly prohibits the requirement of an impound account as a condition of a loan under these circumstances, and thus no question arises of overriding the parties' contract.

This district has also observed that standardized deeds of trust, and any impound provisions they contain, must reasonably be considered contracts of adhesion. (*Wilson* v. *San Francisco Fed. Sav. & Loan Assn.* (1976) 62 Cal.App.3d 1, 7 [132 Cal.Rptr. 903].) As such, they must be construed to protect the consumer, who has no practical choice regarding their terms. (*Spence* v. *Omnibus Industries* (1975) 44 Cal.App.3d 970, 973-974 [119 Cal.Rptr. 171].) In this regard, we note the findings of the Department of Consumer Affairs contained in the Enrolled Bill Report for section 2954: Absent any of the statutory circumstances making an impound account compulsory, ". . . the borrower is allowed to choose whether or not he wishes to open an impound account . . . . If he does choose to open such an account, it will naturally be on the terms offered by the bank . . . . Banks believe they will most often be able to convince the borrower of the advisability of opening an impound account . . . ." (Dept. of Consumer Affairs, Enrolled Bill Rep. on Assem. Bill No. 1514 (1973-1974 Reg. Sess.) Sept. 23, 1973, p. 1.) Indeed, at the time of trial, approximately 90 percent of Source One's 540,000 loans had impound accounts. The interpretation of section 2954 urged by Source One, preventing termination of these accounts at the borrower's option, would effectively deny its intended benefits to many borrowers. Such a result is inconsistent with the statutory purpose. (See *Lundquist* v. *Reusser* (1994) 7 Cal.4th 1193, 1205 [31 Cal.Rptr.2d 776, 875 P.2d 1279] ["Our primary task in construing a statute is to determine the Legislature's intent."].)

Our conclusion that voluntary impound accounts must remain voluntary, except as noted above, is bolstered by Kirk's expert, Professor Hetland, who testified that Source One's handling of Kirk's request to terminate the impound account varied from standards generally prevailing among California lenders. Based on that testimony, the trial court found that the prevailing practice permitted borrowers to terminate voluntary impound accounts on request.[15] Moreover, Source One's own office memo to its escrow processing representatives stated that "In California, it is a state requirement that on all **Conventional Loans**, if the Loan to Value (LTV) is equal to 90% or less, we are required to grant the customer's request for an escrow waiver." Such an "escrow waiver" would allow a borrower the option to terminate an impound account.[16] Thus, our reading of the statute conforms with the evidence of industry standards and Source One's own apparent interpretation of the legal principles expressed in section 2954.

---

[15]The trial court noted the evidence showed "that it is the custom and practice in the State of California, to permit the borrower to terminate those agreements."

[16]Source One's procedure for granting the "escrow waiver," however, fell short of section 2954's requirements. Source One required the customer to sign a form like the one sent to Kirk, which allowed Source One to reactivate the impound account for various reasons, some of which are inconsistent with section 2954. For example, Source One's form allowed it to

II. *Other Issues**

. . . . . . . . . . . . . . . . . . . . . . . . . .

*Disposition*

The judgment against Source One on the claims for breach of contract and violation of Civil Code section 2954 is affirmed. The jury verdicts holding Source One liable for interference with contract and libel are reversed. The denial of injunctive relief and judgment for Source One on the unfair business practices claim is reversed. The case is remanded for retrial on the claims of libel, injunctive relief, and damages. Each party is to bear its own costs on appeal.

Parrilli, J., and McGuiness, J.,† concurred.

A petition for a rehearing was denied July 15, 1996, and the petition of appellant Charles R. B. Kirk for review by the Supreme Court was denied October 2, 1996.

---

reinstate the impound account if the borrower missed a single tax payment, while the statute provides for a mandatory impound account when the borrower fails to pay two consecutive tax installments.

*See footnote, *ante*, page 483.

†Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.