[No. B104684. Second Dist., Div. Seven. Dec. 29, 1999.]

JAMES KROUPA et al., Plaintiffs and Appellants, v.
SUNRISE FORD et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts C. and D. of the Discussion.

## COUNSEL

The Harris Law Firm and Aurora Dawn Harris for Plaintiffs and Appellants.

Callahan, McCune & Willis and Peter M. Callahan for Defendants and Respondents Sunrise Ford, Kenneth Lecheminant and Dave Huber.

Zevnik, Horton, Guibord, McGovern, Palmer & Fognani, Charles J. Malaret and Berta A. Blen for Defendant and Respondent Lendco Acceptance Corporation Liquidating Trust.

Brewer & Brewer and Templeton Briggs for Defendant and Respondent AT&T Automotive Services, Inc.

## OPINION

LILLIE, P. J.—Plaintiffs James and Melissa Kroupa (Kroupa) sued an automobile dealer, a lease broker and the ultimate lessor for fraud and violations of consumer protection laws in connection with Kroupa's lease of a 1991 Ford pickup truck. Kroupa appeals from the judgment entered against them after a bench trial. The judgment included an award of $12,089.01 plus prejudgment interest on lessor's cross-complaint for breach of the lease, and an award of attorneys' fees and costs to all defendants totaling $415,969.88.

The appellate issues relate to the sufficiency of the trial court's statement of intended decision, violations of section 2985.8 of the Vehicle Leasing Act (the Act), violation of the federal Truth in Lending Act, and the amount of the award for attorneys' fees.

We conclude there was a violation of the Act, and reverse the judgment with remand for a determination of the amount of the respondents' liability to Kroupa under the Act.

### FACTUAL AND PROCEDURAL BACKGROUND

On July 14, 1991, Kroupa leased a 1991 Ford pickup from defendant Sunrise Ford. At the time, Kroupa had two vehicles, a 1990 Ford truck on which Kroupa owed almost $18,000, and a 1991 Ford Escort under lease from another dealer and, according to Kroupa, subject to termination fees of $2,500 (or which he could purchase for approximately $13,000). Both of these vehicles were either turned-in or traded-in in connection with the lease of the new Ford pickup.

The sticker or "Manufacturers Suggested Retail Price" (MSRP) of the new truck was $21,955, less a $1,000 rebate. The lease did not state the initial lease balance (the value of the vehicle at inception of the lease, referred to

by the parties as inception value or capitalized cost), but a formula for its calculation appeared in the lease. Use of the formula shows the inception value placed on the vehicle as $27,210. The lease was for a five-year term, called for total payments over the term of the lease amounting to $33,157.20, and gave Kroupa an option to purchase the truck at the end of the lease term for the greater of its estimated wholesale value (identified elsewhere in the lease as $6,366), or its realized value.

Kroupa did not read the lease, instead relying on the salesman, defendant Dave Huber (Huber), to explain it to them. Defendant Kenneth Lecheminant (Lecheminant), Sunrise Ford's sales manager, signed the lease for Sunrise Ford on a lease form provided by defendant Lendco Acceptance Corporation (Lendco). Lendco, a lease broker, had an authorized dealer agreement with Sunrise Ford, which did not carry its own portfolio of leases. Lendco was responsible for reviewing leases from the dealer to ensure they complied with the guidelines of the ultimate lessor/assignee, defendant AT&T Automotive Services, Inc. (AT&T). The initial lease was signed on July 17, 1991, and was replaced by a second, corrected lease signed on August 14, 1991.

After two years of the five-year lease term, Kroupa sought to terminate the lease, as they needed a larger vehicle to accommodate a new baby. They found that the lease payoff was then $22,433.00—well in excess of the $20,955.00 list price at which the vehicle could have been purchased outright two years earlier. Mr. Kroupa thereupon filed a complaint with the Department of Motor Vehicles (DMV), obtained access to his file at the dealership, and ultimately filed this lawsuit in May 1994.

Kroupa sued Sunrise Ford, Lecheminant (sales manager), Huber (salesman), Lendco[1] and AT&T for fraud, constructive fraud, negligent misrepresentation, and tort in se (statutory violations) and, in addition sued Sunrise, Lendco and AT&T for breach of contract, violation of the Consumer Legal Remedies Act, and rescission. AT&T cross-complained against Kroupa, alleging breach of the written vehicle lease agreement, wrongful possession and retention of the vehicle, and conversion.[2]

At the heart of Kroupa's lawsuit was the question how and why the capitalized cost of the vehicle was set at $27,210, instead of at the sticker

---

[1] "Lendco" refers collectively to Lendco Acceptance Corporation Liquidating Trust, successor in interest to Lendco Acceptance Corporation and Lenders Auto Finance Group, Inc., and Lendco Financial Services, Inc. Suit was initially brought against Lendco Financial Services, Inc., Lendco Acceptance Corporation, and Lendco Auto Finance Group. Kroupa dismissed defendant Lendco Financial Services, Inc., as well as defendant Huber, on December 4, 1995, the first day scheduled for trial.

[2] AT&T also cross-complained against Sunrise Ford and Lendco Financial Services, Inc., for breach of contract, against Sunrise and Lendco for recourse as to any liability on certain

price of $20,955, and whether this was done fraudulently or otherwise in violation of statutory requirements applicable to consumer transactions.

These additional facts were adduced at trial. The Lendco lease forms contained a separate, detachable worksheet, which was never shown to prospective lessees. In this case, the worksheet showed the capitalized cost of $27,210 and its components. This capitalized cost included a vehicle cost (including "Value Adds" such as additional equipment) of $25,865, plus service contract for $895 and Lendco fee of $450. AT&T's funding policies allowed it to pay the dealer 110 percent of (a) MSRP and (b) the cost of any added equipment, plus a $250 fee for dealer preparation, a $450 lender's fee, and a $765 fee for a "Protex Package" (which included oil additives and the like). The initial lease signed by Kroupa and Sunrise Ford was rejected by the lender because it was "over-advanced" by $899.50 (that is, the dealer was asking for more money for the vehicle than could be funded under AT&T's guidelines). The second, replacement leased signed by Kroupa and Sunrise Ford had slightly lower monthly payments and a slightly higher "drive away" amount (initial monthly payment, registration fees, etc.). This second lease was also "over-advanced," by $949.25, but this time the lease was approved by AT&T, apparently because AT&T believed that additional equipment—an alarm, step bumper, and bedliner—had been added to the vehicle, thus increasing its value. That equipment had not in fact been added to the vehicle. A "Due Bill" signed by Mr. Kroupa showed that nothing additional was due or promised, and it was stipulated at trial that the signature on a second Due Bill listing the added equipment was not Mr. Kroupa's signature.[3] Sunrise Ford's file on the Kroupa's lease also contained two "trade-in" forms, one for each of Kroupa's two vehicles. These forms contained Mr. Kroupa's signature (although, despite the testimony of Kroupa's own handwriting expert, Mr. Kroupa denied ever seeing or signing them). The trade-in forms show in each case the payoff amount for the vehicle, a lower "agreed price," the resulting negative equity in each vehicle,

statutory violations, and against all cross-defendants for indemnification. Cross-complaints were likewise filed by Sunrise Ford and Lecheminant against Lendco and AT&T for indemnity and declaratory relief, and by Lendco against Sunrise Ford, Huber and Lecheminant for declaratory relief, breach of contract and indemnification. Voluntary dismissals of all cross-complaints (except for AT&T's cross-complaint against Kroupa) were entered on December 4, 1995.

[3] A letter from counsel for Lendco and AT&T to Sunrise Ford disclosed that a review of Lendco's and AT&T's account files, together with Kroupa's documentation in support of his DMV complaint, confirmed that the cost of the equipment had been passed on to Kroupa in the lease. Counsel alleged in the letter that Sunrise Ford had fraudulently obtained funding from Lendco and AT&T in the amount of $750 for equipment never installed.

and the customer's agreement to apply the negative proceeds (totaling $7,819) to a new lease.[4]

Kroupa claimed they had been defrauded, and attempted to show that (a) they had assumed the cost of the vehicle was the MSRP sticker price, (b) they understood that the $2,500 they paid to Sunrise Ford ($2,000 in cash and $500 to be paid in a few weeks time) was the fee they had to pay to turn in the 1991 Ford Escort they were leasing; (c) Mr. Kroupa thought he had equity of about $1,500 in the 1990 Ford truck he was trading in, which he believed was reflected in the credit he was given for payment of the "drive-away" charges on the new lease ($1,321.27 on the initial lease, changed to $1,438.47 on the corrected lease); (d) salesman Huber had told them that after making all payments under the lease ($33,157.20) they would own the vehicle; (e) Kroupa had signed a number of documents in blank (including bills of sale, trade-in payoff and adjustment forms, and powers of attorney); (f) Mr. Kroupa never signed (or that if he did, he signed in blank) the trade-in forms showing Kroupa's negative equity in their two vehicles; and (g) the removable Lendco worksheet that showed all the relevant figures and calculations was a method of deliberately concealing markups in capitalized cost from the customer. In addition to the fraud claims, Kroupa argued, inter alia, that all the agreements of the parties were required to be disclosed in the lease.

Sunrise Ford and Lecheminant, Lendco and AT&T defendants, having dismissed their cross-claims against each other, maintained there was no fraud and that they had complied with all then-effective statutory requirements. They pointed to the two trade-in forms for Kroupa's two vehicles, and took the position that the trade-ins and the lease were three separate transactions and were properly documented separately.

After a lengthy trial, the court on April 11, 1996, filed a statement of intended decision, finding that (a) Kroupa signed the "documents in question" with full knowledge, (b) the defendants were "fair in disclosure" and there was no fraud, (c) the federal truth-in-lending laws did not apply, (d) there was no violation of Vehicle Code section 11705, subdivision (a)(14)[5] and (e) none of the defendants had any obligation to disclose the capitalized cost, which Kroupa could compute based on other figures in the lease. The trial judge told Kroupa at a posttrial hearing that "it comes down to the fact

---

[4]These forms were prepared by Lecheminant, and were apparently patched together from forms he had used at his previous employment, not forms regularly used at Sunrise Ford.

[5]Section 11705, subdivision (a)(14), says that the DMV, after notice and hearing, may suspend or revoke a dealer's license if the dealer has "caused any person to suffer any loss or damage by reason of any fraud or deceit practiced on that person or fraudulent representations made to that person in the course of the licensed activity."

that I don't believe you." The statement of intended decision also awarded attorneys' fees to defendants and to AT&T as cross-complainant, in amounts to be determined.

On April 24, 1996, Kroupa filed objections to the proposed judgment prepared by AT&T, and a request that a statement of decision, together with supporting facts and law, be filed as to some 73 "principal controverted issues."[6] At a hearing on April 26, 1996, on attorneys' fees, the court, in response to Kroupa's counsel's statement that she had filed a request for statement of decision, said that his statement of intended decision was his decision and that he was "not going to do it twice." In its judgment filed May 17, 1996, the court awarded defendant AT&T $12,089.01 plus prejudgment interest on its cross-complaint against Kroupa for breach of the lease, and awarded attorneys' fees and costs to all defendants "pursuant to contract and pursuant to Civil Code §§ 2988.9 and 2983.4" in the full amount of each of their requests, totaling $415,969.88. At a hearing on June 28, 1996, the trial court denied Kroupa's motion for a new trial, and on July 18, 1996, Kroupa filed a notice of appeal.

### DISCUSSION

Kroupa does not challenge the trial court's conclusions on the fraud and misrepresentation counts, but insists that the trial court's statement of intended decision was defective, and that the court erred as a matter of law in finding there were no statutory violations. We agree.

### A. The Trial Court's Statement of Intended Decision

After the trial court filed its statement of intended decision, Kroupa timely requested a statement of decision. Among the 73 controverted issues specified by counsel were a number of items related to the question whether the lease complied with the requirement of section 2985.8 of the Act that all lease contracts must "contain in a single document all of the agreements of the lessor and lessee with respect to the obligations of each party." Nowhere in its statement of intended decision did the trial court address this issue. Nor

---

[6]Sunrise Ford says that this request was untimely, as it was filed on April 24th, more than 10 days after the court filed and mailed its statement of intended decision (on April 11th). The request was timely. The five-day extension of response time provided by Code of Civil Procedure section 1013, subdivision (a), applies to Code of Civil Procedure section 632 where the trial court's tentative decision is served on the parties by mail. (*Staten v. Heale* (1997) 57 Cal.App.4th 1084, 1090 [68 Cal.Rptr.2d 35] and cases cited therein.)

did it otherwise respond to Kroupa's request, other than to state that it had already issued its decision and did not intend to do anything else.[7]

Kroupa's 73-point request for a statement of decision well may have left something to be desired. Some courts have "condemn[ed] the practice, engaged in here, of generally requesting a finding on a subject without suggesting the specific factual finding requested." (*McAdams v. McElroy* (1976) 62 Cal.App.3d 985, 993 [133 Cal.Rptr. 637].) Nonetheless, the trial court's cavalier dismissal of Kroupa's request without any apparent analysis is likewise less than satisfactory. On the other hand, while the trial court did not follow mandated procedures, it is also the case that where "only a pure question of law is presented, the court need not issue a statement of decision." (*Earp v. Earp* (1991) 231 Cal.App.3d 1008, 1012 [283 Cal.Rptr. 43].)

■ In this case, the relief sought on appeal is reversal and entry of judgment against respondents for statutory violations. Since the applicability of a statute presents a question of law which we may review de novo (*Uniroyal Chemical Co. v. American Vanguard Corp.* (1988) 203 Cal.App.3d 285, 292 [249 Cal.Rptr. 787]), and since we conclude there was a statutory violation requiring reversal, as to which no further factfinding is required, we see no point in requiring a further statement of decision from the trial court.[8]

B. *The Lease Violated the Vehicle Leasing Act, Civil Code Section 2985.8*

■ The Act requires (and required at the time of this transaction in 1991) that every lease contract: "shall contain in a single document all of the agreements of the lessor and lessee with respect to the obligations of each party." (Civ. Code, § 2985.8, now § 2985.8, subd. (a).)[9]

Kroupa had two vehicles on July 17, 1991, when they came to Sunrise Ford to see about purchasing or leasing a Ford pickup truck. At the conclusion of the transaction later that day, Kroupa had traded and/or turned in

---

[7]In its statement of intended decision, the court did not indicate, as permitted by rule 232(a) of the California Rules of Court, that the tentative decision would be the statement of decision unless either party specifies controverted issues or makes proposals not covered in the tentative decision.

[8]We note also that the issues listed in Kroupa's opening brief, on which they say the trial court refused to rule, are either questions of law or are no longer relevant in view of our disposition of this appeal (such as the issues relating to the award of attorneys' fees to respondents).

[9]A lessor who fails to comply with any requirement imposed under Civil Code section 2985.8 is liable for (a) any actual damages sustained by the person making the claim as a result of the failure, (b) 25 percent of the total amount of monthly payments under the lease (not less than $100 or more than $1,000), and (c) the costs of the action together with a reasonable attorneys' fee. (Civ. Code, § 2988.5, subd. (a).)

those two vehicles to Sunrise Ford, and had a lease for a new 1991 Ford truck. The trade-in forms apparently signed by Mr. Kroupa show the agreed price at which Mr. Kroupa would sell the vehicles to the dealer, the payoff amount (in each case, more than the sales price), and the resulting negative equity in each vehicle. Each form also indicates Mr. Kroupa's agreement to apply the negative proceeds from the two vehicles (totaling $7,819) to the new lease. The lease itself, however, does not refer to the fact that the negative proceeds from the two vehicles have been rolled over into the new lease. Neither the lease nor the trade-in forms refer to the $2,500 ($2,000 in cash and $500 promised) that Mr. Kroupa paid to Sunrise Ford in connection with the trade-in of the vehicles. The lease also does not mention the $1,000 rebate on the new truck, although it is noted on one of the trade-in forms.

There are no reported cases interpreting this, or any other provision of the Act. However, we think it is patent that there was a single transaction in this case, and that there is *not* a single document that contains "all of the agreements" of Sunrise Ford and Kroupa with respect to their obligations.

It is plain from the face of the trade-in forms that Mr. Kroupa, whether he understood it or not, was agreeing to apply the negative proceeds of the two trade-ins to his new lease. The forms he signed read: "Customer Agrees to Apply proceeds <$3,839> to New Lease" (for the 1990 truck) and "Customer Agrees to Apply proceeds <$3,980> to New Lease" (for the 1991 Ford Escort). Moreover, we cannot believe that Sunrise Ford would have agreed to either trade-in without the lease, or that Mr. Kroupa would have agreed to the lease without the trade-ins (which were necessary to eliminate his obligations on the other two vehicles). Accordingly, we cannot agree that there were "three separate transactions." Indeed, Sunrise Ford's (and AT&T's) own descriptions of the transaction in their briefs make it quite clear that the negative proceeds from the trade-ins were very much a part of the lease. Sunrise Ford says: "Sunrise Ford was assuming the negative equity owed by plaintiffs and those contracts would have to be paid off by Sunrise Ford. Sunrise Ford passed this negative amount onto the assignee-lessor [AT&T] in the form of a higher cap[italized] cost and the lessor reimbursed Sunrise Ford when it paid the higher price for purchasing the vehicle. The lessor then charged the negative [equity] back to the plaintiffs in the form of higher payments on the higher cap cost." Essentially the same explanation of the transactions appears in AT&T's brief.

The lease does not refer in any way, anywhere, to Sunrise Ford's admitted agreement to "assum[e] the negative equity owed by plaintiffs" or to the

lessor's admitted charge of "the negative [equity] back to the plaintiffs in the form of higher payments . . . ." Sunrise Ford and AT&T argue that the Act in 1991 contained no specific requirement that a lease form contain a separate item for "negative equity." That is so, but irrelevant. The statute required that all agreements between the parties appear in a single document, *and* it *also* required that every contract contain the 18 "separate items" specifically listed in the Act.[10] We reject the implicit suggestion that, if a point of agreement between lessor and lessee is not on the "separate items" list, it may be omitted entirely from the lease. If that were so, there would be no reason for the Legislature to have stated the "single document" requirement in the first place. ■ It is a fundamental rule of statutory construction that, "whenever possible, significance must be given to every word in pursuing the legislative purpose, and the court should avoid a construction that makes some words surplusage." (*Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 330 [87 Cal.Rptr.2d 423, 981 P.2d 52].) We adhere to that rule here.

We are mindful that the Act was amended in 1997, and now requires a separate statement specifically labeled "Itemization of Gross Capitalized Cost," and that "[a]ny outstanding prior credit or lease balance" is one of the items specifically required to be disclosed in that itemization. (Civ. Code, § 2985.8, subd. (c)(2)(D).) Our decision, of course, is not based on these specific disclosure requirements, which were not in effect at the time of Kroupa's lease (and which also contain specific labeling, location, and circumscription requirements). ■ We decide solely on the basis of the then effective provision of the statute requiring all of the agreements of the lessor and the lessee to be contained in a single document.[11] The facts concerning Kroupa's trade-ins or turn-ins, including Mr. Kroupa's cash payment, any rebates and Sunrise Ford's agreement to assume the remaining negative equity and charge it back to Kroupa in the form of higher payments in the lease, were required to be reflected in some way, somewhere, in the lease.

---

[10]The "single document" requirement was in the first sentence of Civil Code section 2985.8. The text then specified several other requirements pertaining to signature, copies to be furnished, and so on, and continued: "Every contract shall contain, although not necessarily in the sequence or order set forth below, the following separate items . . . ," and then listed in paragraphs (a) through (r) the specific items that must appear in every contract.

[11]The purposes of the 1997 amendments were to conform California law with federal law and regulations, help consumers "by improving the disclosure of lease terms and standardizing lease requirements, while at the same time assisting consumers and dealers by prescribing early termination liability." There was no change in the single document requirement, which is now Civil Code section 2985.8, subdivision (a), of the Act. (Assem. Com. on Appropriations, *Analysis of Sen. Bill No. 1291* (1997-1998 Reg. Sess.), coms. 1 and 2 (Aug. 27, 1997) pp. 2-3.)

C., D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is reversed and the cause remanded to the trial court for a determination of the amount of respondents' liability under the Vehicle Leasing Act. Kroupa to recover costs on appeal.

Johnson, J., and Woods, J., concurred.

On January 20, 2000, the opinion was modified to read as printed above. Respondents' petitions for review by the Supreme Court were denied March 15, 2000.

---

*See footnote, *ante*, page 835.