[Nos. A093355, A095611. First Dist., Div. One. Oct. 7, 2002.]

KATRINA R. LaCHAPELLE, Plaintiff and Appellant, v.
TOYOTA MOTOR CREDIT CORPORATION et al., Defendants and
Respondents.

**COUNSEL**

Law Office of Sharon Kinsey, Sharon L. Kinsey; Mazur & Mazur, Janice R. Mazur and William E. Mazur, Jr., for Plaintiff and Appellant.

Stroock & Stroock & Lavan, Lisa M. Simonetti and David W. Moon for Defendants and Respondents.

**OPINION**

**STEIN, Acting P. J.**—These consolidated appeals arise from a five-year lease of a Toyota 4-Runner (the Toyota) by plaintiff and appellant Katrina R. LaChapelle from FAA Concord T, Incorporated (the dealer). The lease agreement recites, among other things, that the "agreed-upon value" of the Toyota was $31,938, the gross capitalized cost would be $32,653 and the residual value at the end of the lease would be $15,524.18. Appellant agreed to pay $1,207.94 at the time of the lease signing or delivery and to make 60 additional monthly payments of $530.94. At the end of the lease term she was to have the option of purchasing the Toyota for $15,524.18 (defined as its residual value). The agreement further recites that appellant was trading in a 1997 Honda Civic (the Honda). Blanks for the agreed-upon trade-in value of the Honda, and for the trade-in value that would be applied against the gross capitalized cost of the Toyota, however, were marked "N/A."

By her complaint, appellant alleged that she leased the Toyota only after the dealer told her that she could not qualify for a purchase loan, and the only means by which she could acquire the Toyota was by leasing it. The dealer allegedly concealed that appellant would pay more for leasing the Toyota than for purchasing it, and falsely represented that she could convert the lease to a purchase without penalty if she were to make a substantial down payment at some later date. Appellant sought rescission of the agreement and damages, alleging that the transaction violated various provisions of the Vehicle Leasing Act (VLA) (Civ. Code, § 2985.7 et seq.), the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.) and California's unfair competition laws (Bus & Prof. Code, § 17200 et seq.). Appellant's VLA and CLRA claims were asserted not only against the dealer, but also against Toyota Lease Trust, the agency that financed the transaction, and Toyota Motor Credit Corporation, to whom the lease was

assigned. Toyota Lease Trust and Toyota Motor Credit Corporation are the respondents in these consolidated appeals.

Appellant ultimately settled her claims against the dealer. On September 15, 2000, the trial court granted respondents' motion for summary judgment, and on October 20, 2000, the court entered judgment in favor of respondents. On May 9, 2001, the court awarded respondents attorney fees in the amount of $34,963.

APPEAL NO. A093355—SUMMARY JUDGMENT

I.

*Effect of Good Faith Settlement with the Dealer*

■ As a threshold issue, respondents claim that appellant entered into a good faith settlement agreement with the dealer by which appellant, among other things, released respondents from all liability. The settlement agreement submitted by respondents in support of this argument, however, is unsigned. We have augmented the record to include a copy of the signed agreement, which, unlike the draft submitted by respondents, does not release the dealer's "assigns." As respondents' liability, if any, arises from their status as assignees of the lease, the settlement agreement does not act to release them from that liability.

II.

*Summary Judgment*

■ A summary judgment motion "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A moving defendant has met its burden of showing that a cause of action has no merit if it has shown that one or more elements of the cause of action cannot be established, or that there is a complete defense to that cause of action. Once the defendant has met that burden, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or defense thereto. (Code Civ. Proc., § 437c, subd. (*o*)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 [107 Cal.Rptr.2d 841, 24 P.3d 493].) A party cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact. (*Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509, 1524 [80 Cal.Rptr.2d 94].)

As the reviewing court, we independently review the record that was before the trial court to determine whether the facts as shown by the parties give rise to a material issue of fact. (*Fraizer v. Velkura* (2001) 91 Cal.App.4th 942, 945 [110 Cal.Rptr.2d 918]; *Cheyanna M. v. A.C. Nielsen Co.* (1998) 66 Cal.App.4th 855, 861 [78 Cal.Rptr.2d 335].)

III.

*Vehicle Leasing Act*

The VLA regulates the leasing of automobiles. As relevant here, Civil Code section 2985.8 states requirements for the form of the lease agreement, and sets forth the terms that must be contained in a "single document" to be furnished to the lessee before the leased vehicle may be delivered to the lessee. Section 2988.5 imposes civil liability on the lessor for failing to comply with the act, also allowing a lessee to recover any actual damages sustained as the result of such failure. Section 2988.7 permits the lessee to seek rescission as an alternative to an action brought under section 2988.5.

Two provisions of the act expressly pertain to assignees such as respondents.

Civil Code section 2988.5, subdivision (e), provides: "Except as otherwise specifically provided in this chapter, any civil action for a violation of this chapter which may be brought against the original lessor in any lease transaction may be maintained against any subsequent assignee of the original lessor where the violation from which the alleged liability arose is apparent on the face of the instrument assigned unless the assignment is involuntary."

Civil Code section 2986.10 provides:

"(a) An assignee of the lessor's rights is subject to all equities and defenses of the lessee against the lessor, notwithstanding an agreement to the contrary, but the assignee's liability may not exceed the amount of the obligation owing to the assignee at the time of the assignment.

"(b) The assignee shall have recourse against the lessor to the extent of any liability incurred by the assignee pursuant to this section regardless of whether the assignment was with or without recourse."

*Appellant's Claims*

Appellant cites Civil Code section 2985.8, subdivision (c)(2)(A), which requires every lease contract to disclose "[t]he agreed-upon value of

the vehicle as equipped at the time of the lease." Appellant contended in the trial court that defendants violated the act because the lease agreement falsely reported the agreed-upon value of the Toyota as $31,938, when, in fact, the dealer had not even mentioned the value of the Toyota. Appellant contended that a second violation occurred because the lease agreement failed to describe her Honda as a trade-in vehicle or to state any agreed-upon gross value assigned to the Honda. Appellant sought actual damages, rescission of the lease, restitution, civil penalties, punitive damages and attorney fees.

In granting summary judgment to respondents, the trial court found that neither violation alleged by appellant was apparent on the face of the lease, and that respondents, as assignees of the lease, therefore could not be held liable for the alleged violations. The court further concluded that the fact that the alleged violations did not appear on the face of the lease agreement not only precluded appellant from seeking damages and civil penalties from respondents, but also precluded her from seeking rescission of the lease agreement against them.

Appellant argues that summary judgment was improper because (1) there is a triable issue of fact as to whether respondents' connection with the dealer and the lease agreement was such that they should be characterized not simply as assignees, but lessors under the act; (2) that at least one alleged violation appears on the face of the lease; and (3) that the "face of the instrument" limitation of Civil Code section 2988.5 does not apply to rescission actions.

*Respondents as Lessors*

The first of appellant's arguments—that respondents must be characterized as "lessors" for purposes of the VLA—was not raised by her in the trial court. The validity of such an argument turns on the facts in any particular case, i.e., whether an assignee's connection with the original purchase or lease transaction is so close as to justify viewing the assignee as the original creditor. (See *Ford Motor Credit Co. v. Cenance* (1981) 452 U.S. 155 [101 S.Ct. 2239, 68 L.Ed.2d 744] and *Boncyk v. Cavanaugh Motors* (9th Cir. 1981) 673 F.2d 256.) Appellant is not entitled to raise for the first time on appeal a theory that involves a controverted factual situation not put in issue below. (*City of San Diego v. Rider* (1996) 47 Cal.App.4th 1473, 1493 [55 Cal.Rptr.2d 422].)

Appellant, in her reply brief, claims that she *did* put into issue the question of respondents' status as lessors, citing arguments made in connection with

the Federal Trade Commission "Holder Rule" (16 C.F.R. § 433.2 (2002)).[1] The record, however, does not bear out this claim.

Appellant argued in the trial court, as she argues here, that she is entitled to seek rescission from respondents even if the violations of the act alleged by her do not appear on the face of the lease, because Civil Code section 2986.10 provides that the rights of an assignee are subject to "all equities and defenses of the lessee against the lessor." Appellant claimed, in part, that in order to make the VLA consistent with the Holder Rule, the VLA, through section 2986.10, must be construed to permit lessees to state affirmative claims against assignees even when a basis for those claims does not appear on the face of the lease.

The Holder Rule requires credit consumer contracts to provide notice that any holder of the contract is subject to all claims and defenses that a buyer could assert against the seller, and appellant argued that it follows that respondents, as assignees, were subject to any claims she could have asserted against the dealer. Nonetheless, in what appears to be little more than an afterthought, appellant also asserted that "[a] 'seller' [under 16 C.F.R. § 433.2] is defined as including a person who, in the ordinary course of business, leases goods to consumers. When that [sic] Toyota Motor Credit accepts assignment of a lease contract from the leasing dealer, it in effect becomes a 'lessor,' i.e., a 'person who leases goods' and is therefore subject to the Holder Rule." Appellant supported this assertion—that an assignee is subject to the Holder Rule not just as an assignee but as a lessor—by a footnote reference to the Federal Reserve Board Official Staff Commentary on Regulation M. (12 C.F.R. §§ 213.1-213.8, implementing the consumer leasing portions of the TILA), and also to *Ford Motor Credit Co. v. Cenance, supra*, 452 U.S. 155, 157-158 [101 S.Ct. 2239, 2240-2241], which appellant cited as authority for the proposition that an " 'assignee may be a lessor.' "

We do not view this assertion—that an assignee is subject to the TILA's Holder Rule—as encompassing an assertion that respondents are lessors under the VLA. Moreover, *Ford Motor Co. v. Cenance, supra*, 452 U.S. 155, establishes only that there are circumstances under which an assignee may be deemed a creditor for purposes of the TILA. Finally, even if the holding in *Cenance* could be extended to support an assertion that there are circumstances in which an assignee may be deemed a lessor under the VLA, and even if appellant's assertions in the trial court could be characterized as the argument that respondents should be deemed to be lessors, the merits of such an argument necessarily turn on the facts present in a given transaction.

[1]Title 16 of the Code of Federal Regulations part 433.2 (2002) was promulgated to support the Truth in Lending Act (TILA), 15 United States Code sections 1601-1693.

Appellant stated no facts to support her claims. Appellant, accordingly, provided no basis for a ruling that respondents were lessors under the VLA.

*The Face of the Lease Instrument*

Appellant has not renewed her argument that respondents might be liable for the alleged failure of the dealer to negotiate an agreed-upon value of the Toyota, apparently recognizing that because the lease agreement recites an agreed-upon value of $31,938, the dealer's failure, if any, does not appear on the face of the lease agreement. She claims only that the face of the lease instrument discloses (1) a discrepancy relating to the trade-in value of her Honda, and (2) a violation of the Federal Trade Commission (FTC) Holder Rule.

1. *The Trade-in*

Civil Code section 2985.8, subdivision (c)(4) requires every lease to include "[a] brief description of each vehicle or other property being traded in and the agreed-upon value thereof if the amount due at the time of signing the lease or upon delivery is paid in whole or in part with a net trade-in allowance or the 'Itemization of Gross Capitalized Cost' includes any portion of the outstanding prior credit or lease balance from the trade-in property." The lease recites that appellant traded in a 1997 Honda Civic, but a blank for "Net Trade in Allowance" is filled in with the notation "N/A."

Appellant contended in the trial court that it therefore appears from the face of the lease that there had been a violation of Civil Code section 2985.8. By its terms, Civil Code section 2985.8, however, requires disclosure of an agreed-upon value of a trade-in vehicle only if the amounts due or owed as a result of the trade-in are made part of the financing of the lease. In the present case, as appellant conceded in the trial court, she received cash, in the form of a $500 check, for her equity in the Honda. It appears that the dealer handled appellant's trade-in as a courtesy to appellant, and, after the value of the trade-in was determined, sent her a check for her equity interest in the Honda. The trade-in was not a part of the financing for the lease.

Appellant does not renew the specific argument made by her in the trial court, arguing instead that the face of the lease reveals a violation of the "single document" rule of Civil Code section 2985.8, subdivision (a): "Every lease contract shall be in writing . . . and shall contain in a single document all of the agreements of the lessor and lessee with respect to the obligations of each party." Appellant apparently contends that noting the trade-in of the Honda, but not assigning it a value, established on the face of the lease that

the parties entered into a transaction that was not detailed in the lease agreement.

The "single document" rule cannot reasonably be read as requiring a lease agreement to detail a transaction that is not a part of the lease transaction. A main purpose of the VLA, including the single document rule, is to protect consumers by improving the disclosure of lease terms and standardizing lease requirements. (Assem. Com. on Appropriations, Analysis of Sen. Bill No. 1291 (1997-1998 Reg. Sess.) com. 1, p. 2; and see *Kroupa v. Sunrise Ford* (1999) 77 Cal.App.4th 835, 844, fn. 11 [92 Cal.Rptr.2d 42].) This purpose would be hindered, rather than furthered, by compelling dealers to place terms of a separate transaction on the face of the lease agreement. Such a requirement could only lead consumers to conclude, incorrectly, that the terms of the separate transaction have some bearing on the terms of the lease. It follows that a dealer's failure to recite the terms of a trade-in agreement on the face of a lease does not violate the single document rule unless that trade-in agreement is a part of the lease agreement. It further follows that the fact that a lease agreement notes a trade-in but does not set forth the details of that transaction, does not demonstrate, on the face, of the lease agreement, that the single document rule has been violated.

*Kroupa v. Sunrise Ford, supra,* 77 Cal.App.4th 835, cited by appellant, does not support her claim that the lease agreement here was required to disclose the terms of the trade-in. The plaintiffs in that case traded in two vehicles in connection with the lease of a truck. They had a negative equity in both vehicles, and the transaction included the application of the negative proceeds of the two trade-ins to the lease. The appellate court, accordingly, determined that the trade-ins and the lease were part of a single transaction. Appellant's citation to *Kroupa* would be persuasive if appellant's equity in the Honda had been applied to her lease, but as it was not, the reasoning followed by the court in *Kroupa* has no application here.

It also is not persuasive that the trial court in the present case denied a motion for summary judgment, filed by the dealer, finding, in part, that material issues of fact existed as to whether the lease agreement met the single document rule. Appellant made claims against the dealer that she did not make against respondents. She claimed, for example, that the dealer's representative had made a number of promises that were not reflected in the lease agreement. She also claimed that she never discussed the value of the Toyota with the dealer, and complained that the lease agreement nonetheless set forth an agreed-upon value for that vehicle. These claims involved issues of fact, and the trial court presumably determined that they

might, in some way, implicate the single document rule. There is no reason to read the court's ruling as a finding that there was a disputed issue of fact relating to appellant's claim that the failure to list the trade-in transaction violated the single document rule.

### 2. The FTC Holder Rule

As discussed above, the FTC Holder Rule requires consumer credit contracts to recite that "any holder" of the contract is subject to all claims and defenses that the debtor could assert against the seller. The lease agreement at issue here does not contain such a notice, and appellant claims that this failure is a defect appearing on the face of the lease.

For purposes of the rule, a "Consumer credit contract" is defined as "[a]ny instrument which evidences or embodies a debt arising from a 'Purchase Money Loan' transaction or a 'financed sale.'" (16 C.F.R. § 433.1(i) (2002).) A "Purchase money loan" transaction involves a cash advance received by the customer. (16 C.F.R. § 433.1(d) (2002).) Appellant did not receive a cash advance. "Financing a sale" refers to "[e]xtending credit to a consumer in connection with a 'Credit Sale' within the meaning of the Truth in Lending Act and Regulation Z." (16 C.F.R. § 433.1(e) (2002).) Regulation Z defines a "credit sale" as a sale in which (1) the seller is the creditor, and the consumer agrees to pay an amount substantially equivalent to or in excess of the total value of the property involved, and (2) either will become, or has the option of becoming, the owner of the property upon compliance with the agreement for no additional consideration or for nominal consideration. (12 C.F.R. § 226.2(a)(16) (2002).) Here, although the lease agreement gave appellant the option of becoming the owner of the Toyota at the termination of the lease, she could do so only by paying $15,524.18—an amount that cannot be characterized as "nominal." The lease agreement therefore does meet the definition of a consumer credit contract, and that the FTC Holder Rule, therefore, does not apply to it.

### Civil Code Section 2986.10 and the Right to Rescind

As noted above, "[a]n assignee of the lessor's rights is subject to all equities and defenses of the lessee against the lessor, notwithstanding an agreement to the contrary, but the assignee's liability may not exceed the amount of the obligation owing to the assignee at the time of the assignment." (Civ. Code, § 2986.10, subd. (a).) Appellant, pointing out that Civil Code section 2988.7 confers on lessees the right to rescind as an alternative to seeking relief under Civil Code section 2988.5, contends that her right to rescind against the lessor for a violation of the VLA is an "equity or

defense" that may be raised not only against the lessor, but against an assignee.

In Civil Code section 2988.5, the Legislature struck a balance between the interests of innocent lessees and innocent assignees, creating liability on the part of assignees for a dealer's violations of the VLA only when the violation appears on the face of the lease and therefore should be apparent to the assignee. It would be odd, indeed, if the Legislature, having determined that the competing interests should be balanced in that manner, also established a kind of back door liability for assignees by means of Civil Code section 2986.10. It is far more likely that the Legislature simply recognized that lessees have "equities and defenses" against assignees aside from the remedies provided by the VLA, and adopted section 2986.10 to prevent any limitation of *those* equities and defenses. A lessee, for example, has the right to rescind the contract if the contract was induced by fraud, or if the vehicle is wholly defective. Section 2986.10 reasonably can be read as affirming that this right to rescind survives any assignment of the lease, as opposed to providing that lessees can rescind a lease agreement for a violation of the VLA notwithstanding that the assignee is unaware of the violation and notwithstanding the "face of the lease" limitation of Civil Code section 2988.5.

Our construction of Civil Code section 2986.10 is supported by the fact that the section was patterned after similar provisions in the Unruh Act (Civ. Code, §§ 1801-1812.20) and the Rees Levering Act (Civ. Code, §§ 2981-2984.4), and by the legislative history of all three acts. At the time VLA was adopted in 1976 (Stats. 1976, ch. 1284, § 2, p. 5704, operative Mar. 23, 1977), retail installment sales generally were regulated by the Unruh Act, and installment sales of motor vehicles, in particular, were regulated by the Rees Levering Act. It long had been recognized that buyers under installment sales contracts had the right to raise against assignees any defenses they might have against sellers,[2] and both acts protected consumers from any attempt to limit this right by means of a contractual waiver.[3] Although both acts protected the same right, they used different language, and in 1971, both

---

[2]Such contracts are nonnegotiable instruments. Absent some limiting provision in the sales contract, an assignee takes the assignment subject to any claims the buyer may have against the seller at the time of the assignment. (Civ. Code, § 1459.)

[3]Prior to 1971, Civil Code section 1804.2 provided, "Except as provided in Section 1812.7, an assignee of the seller's rights is subject to all claims and defenses of the buyer against the seller arising out of the sale notwithstanding an agreement to the contrary, but the assignee's liability may not exceed the amount of the debt owing to the assignee at the time that the defense is asserted against the assignee. [¶] The rights of the buyer under this section can only be asserted as a matter of defense to a claim by the assignee." (Stats. 1967, ch. 1294, § 2, p. 3099.) Civil Code section 2983.5 provided in relevant part, "No right of action or defense arising out of a conditional sale contract which the buyer has against the seller, and which

were amended to employ identical language—language later adopted in Civil Code section 2986.10. (Stats. 1971, ch. 999, §§ 1 and 2, p. 1917.)

In 1971, the Supreme Court decided *Vasquez v. Superior Court* (1971) 4 Cal.3d 800 [94 Cal.Rptr. 796, 484 P.2d 964]. One of the issues in *Vasquez* was whether Civil Code section 1804.2 should be read as precluding a buyer from bringing an affirmative action against an assignee for rescission when the assignee had notice of a defense to the contract.[4] At that time, section 1804.2 provided that the rights of a buyer under the section could be asserted only as a defense to a claim by the assignee. The court found that the "defense only" limitation of section 1804.2 did not apply if the assignee had taken the contract with notice of the buyer's defenses. (*Vasquez v. Superior Court, supra,* 4 Cal.3d at p. 824.) Several months later, Senator George R. Moscone, by means of Senate Bill No. 532, proposed an amendment of Civil Code sections 1804.2 and 2983.5 to clarify the law in light of the decision in *Vasquez.* Among other things, Senator Moscone proposed the removal of the "defense only" limitation. Recognizing the concern that removal of this language might expose assignees to claims for injury to person or property, Senator Moscone further proposed that a buyer's rights against an assignee should be limited to the amount due on the contract at the time the assignee received notice of the buyer's defenses and equities. (Legis. Counsel's Dig., Sen. Bill No. 532 (1971 Reg. Sess.).) The Legislature ultimately adopted Senator Moscone's proposal, except that it limited the buyer's rights against an assignee to the amount of the debt owing at the time of the assignment.

The legislative history of the language in Civil Code sections 1804.2, 2983.5, and, ultimately, 2986.10, therefore indicates an intent to carry forward consumers' existing common law rights against assignees as an adjunct to consumer protection legislation. It does not indicate an intent to add to the statutory remedies available to consumers for violations of the relevant act by authorizing rescission against an assignee even when a violation does not appear on the face of the contract.

We hold that a lessee has a right to rescind the lease agreement, notwithstanding its assignment, for a violation of the VLA, only if the violation appears on the face of the lease, and the buyer therefore would be entitled to a remedy against the assignee under Civil Code section 2988.5, subdivision

---

would be cut off by assignment, shall be cut off by assignment to any third party whether or not he acquires the contract in good faith and for value unless the assignee gives notice of the assignment to the buyer as provided in this section and within 15 days of the mailing of notice receives no written notice of the facts giving rise to the claim or defense of the buyer." (Stats. 1965, ch. 327, § 1, p. 1436.)

[4]In *Vasquez,* for example, the buyers sought rescission on the grounds that they had been induced to enter into the contracts by the seller's fraudulent misrepresentations.

(e). As we find no violation appearing on the face of the lease agreement, we further find that appellant asserted no basis for relief against respondents under the VLA.

IV.

*California Uniform Commercial Code*

*California Uniform Commercial Code section 10303*

California Uniform Commercial Code section 10303 provides, in subdivision (e), that a "transfer of 'the lease' or of 'all my rights under the lease,' or a transfer in similar general terms, is a transfer of rights and, unless the language or the circumstances, as in a transfer for security, indicate the contrary, the transfer is a delegation of duties by the transferor to the transferee. Acceptance by the transferee constitutes a promise by the transferee to perform those duties. The promise is enforceable by either the transferor or the other party to the lease."

Appellant contends that under this section, the dealer, in assigning the lease to respondents, must be deemed also to have delegated to them its duties, including the duty to comply with the VLA and the CLRA. The dealer's obligations under the VLA or the CLRA were executed—properly or improperly—at the time the parties entered into the lease agreement. The dealer could not delegate to respondents the duty to do something that was done before the assignment. Indeed, appellant is not actually arguing that the dealer delegated those duties. She is arguing that respondents are responsible for the lessor's failure to comply with its statutory duties. Nothing in California Uniform Commercial Code section 10303 suggests that an assignment includes a duty to guarantee that the assignor's previously executed contractual duties were performed properly. In all events, California Uniform Commercial Code section 10104 provides that where a conflict exists between a provision of the Commercial Code and a consumer law of this state, the latter controls. California Uniform Commercial Code section 10303, therefore, cannot be read as overriding the limitations on consumer rights set forth in the VLA and CLRA.

Appellant also cites California Uniform Commercial Code section 3305, subdivision (a)(3), which provides that the right to enforce the obligation of a party to pay an instrument is subject to "[a] claim in recoupment of the obligor against the original payee of the instrument if the claim arose from the transaction that gave rise to the instrument; but the claim of the obligor may be asserted against a transferee of the instrument only to reduce the

amount owing on the instrument at the time the action is brought." In essence, this section repeats the same rights recognized by the VLA, which, as discussed, provides that any claim the lessee has against the lessor may be asserted against an assignee, but the assignee's liability may not exceed the amount of the obligation owing to the assignee at the time of the assignment. (Civ. Code, § 2986.10.)

It follows that appellant asserted no basis for relief under the California Uniform Commercial Code.

## V.

### *California Legal Remedies Act*

The CLRA protects consumers against deceptive practices resulting in the sale or lease of goods or services to the consumer. Civil Code section 1752 provides that the remedies under the act "shall be in addition to any other procedures or remedies for any violation or conduct provided for in any other law." Appellant claims that issues of fact exist as to whether the dealer engaged in conduct prohibited by the CLRA, and as to whether the dealer's conduct might be imputed to respondents on principles of agency.[5]

As a partial response to appellant's agency argument, respondents submitted evidence that they were not the exclusive source of funding for vehicles purchased or leased through dealers, that dealers were not obligated to use respondent's leasing program and had the power to assign a lease to another lender, that customers were not obligated to accept respondents as the assignee or party servicing the lease agreement and that a customer was free to obtain the lease through a credit union or some other financing company. Appellant did not dispute this evidence. It also is undisputed that although respondents supplied the dealer with a form lease agreement, and thus

---

[5]It will be recalled that appellant settled with the dealer. Respondents contend that if appellant were permitted to obtain additional relief from respondents, she would receive a double recovery in violation of Civil Code section 1692, which provides that any award may not include "duplicate or inconsistent items of recovery." Appellant, however, points out that the $35,000 received by her from the dealer was far less than the damages she seeks, arguing that it cannot be concluded as a matter of law that any additional relief received from respondents would duplicate that received by her as a result of the settlement. Respondents also contend that appellant is estopped from claiming that she was induced into entering the lease agreement by the dealer's alleged misrepresentations because the written agreement itself set forth the terms of the lease and any failure by appellant to know the actual terms is attributable to her own negligence. Appellant counters that the alleged misrepresentations were not wholly contradicted by the written terms of the lease, arguing that having knowledge of the written terms would not cause her to understand that they were misrepresentations. These arguments need not be resolved because we find appellant did not introduce any evidence from which it might be concluded that the dealer acted as respondents' agent.

provided information on the terms on which they would accept an assignment, respondents did not control the contracting process between appellant and the dealer. No California court has addressed the exact point, but courts from other jurisdictions consistently conclude that a dealer does not act as the financing agency's agent simply because the dealer used forms supplied by the financing agency. (E.g., *Pescia v. Auburn Ford-Lincoln Mercury Inc.* (M.D.Ala. 1999) 68 F.Supp.2d 1269, 1282; *Pope v. World Omni Financial Corp.* (Ala. 1992) 599 So.2d 15, 17.) We find these authorities to be persuasive.

Appellant contends, however, that the dealer could be viewed as having acted as respondents' "ostensible" agent. Civil Code section 2300 defines ostensible agency, providing, "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." Although questions of ostensible agency usually involve triable issues of fact (see *American Casualty Co. of Reading, PA v. Krieger* (9th Cir. 1999) 181 F.3d 1113, 1121), they do so only if there is some evidence that the "ostensible" principal in fact caused the third party to believe another to be its agent, and also some evidence that the third party actually harbored such a belief. As the cases mentioned in the previous paragraph establish, however, the act of supplying a form for use by a dealer does not provide evidence of an agency relationship. Respondents, therefore, cannot be charged with having done something suggesting an agency relationship by supplying the form used by the dealer. Moreover, appellant never established that she in fact believed that the dealer was acting on behalf of respondents in negotiating the terms of the lease.

It follows that appellant asserted no basis for relief under the CLRA.

### Conclusion

Appellant has not demonstrated any triable issue of fact that might entitle her to relief on any of her theories. The trial court properly granted summary judgment to respondents.

### APPEAL NO. A095611—ATTORNEY FEES

■ The court awarded respondent's attorney fees under the authority of Civil Code section 2988.9, which provides, in relevant part, "Reasonable attorney's fees and costs shall be awarded to the prevailing party in any action on a lease contract subject to the provisions of this chapter regardless of whether the action is instituted by the lessor, assignee or lessee."

Appellant contends that the court erred in applying section 2988.9, arguing that the controlling statute is Civil Code section 2988.5, subdivision (a)(3).

Civil Code section 2988.5, subdivision (a), sets forth the liability of a lessor for failing to comply with the requirements of sections 2985.8 or 2988. In subdivision (a)(3), it provides that a lessor will be liable for "[t]he costs of the action, together with a reasonable attorney's fee as determined by the court." Appellant, pointing out that section 2988.5 concerns violations of the VLA's disclosure statutes, argues that subdivision (a)(3) of that statute provides the exclusive means for obtaining attorney fees for such violations, emphasizing that it is a one-way statute that does not authorize an award of fees against a lessee. According to appellant, Civil Code section 2988.9 is limited to any action brought under the chapter for some reason other than a violation of the act's disclosure requirements. Appellant supports her argument, in part, by noting that a purpose of including fee-shifting statutes in consumer protection laws is to increase the fiscal feasibility of filing consumer protection suits. (See, e.g., *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1086 [90 Cal.Rptr.2d 334, 988 P.2d 67] [recognizing that the availability of costs and attorney fees to prevailing plaintiffs is integral to making the CLRA an effective piece of legislation].)

We find appellant's argument unpersuasive for several reasons.

First, Civil Code section 2988.9 also is a fee-shifting statute, and therefore, like Civil Code section 2988.5, makes it financially feasible for consumers to bring suits against lessors or assignees. It appears only that the Legislature also sought to discourage unwarranted suits by authorizing awards in favor of prevailing lessors and assignees.

Second, under appellant's construction of Civil Code section 2988.5, assignees can recover attorney fees for unwarranted suits based on any violation of the VLA except for suits based on violations of the act's disclosure requirements. We can see no reason why the Legislature would wish to discourage some, but not all, unwarranted actions brought against assignees.

Third, Civil Code section 2988.5, subdivision (a), as noted, concerns violations of the disclosure statutes by lessors and provides that *lessors* shall be liable for attorney fees. The present case does not concern the liability of a lessor for failing to comply with the VLA. Section 2988.5, subdivision (a), therefore, on its face, has no application.

Finally, language such as that employed in Civil Code section 2988.9 has been interpreted as applying to any and all actions where the subject matter

involves a contract subject to the provisions of the consumer protection legislation at issue. (*Leaf v. Phil Rauch, Inc.* (1975) 47 Cal.App.3d 371 [120 Cal.Rptr. 749] [construing comparable language in the Rees Levering Act, Civ. Code, § 2983.4, and citing similar language in Civ. Code, § 1811.1 of the Unruh Act and the legislative history to that section].) In light of the broad interpretation traditionally given such language, and the fact that the Legislature, presumably aware of this interpretation, did not alter it in enacting Civil Code section 2988.9, it cannot be presumed that section 2988.9 was intended to have only the limited application asserted by appellant. We conclude, therefore, that section 2988.9 authorizes an award of fees to the prevailing party in any type of action in which the subject matter involves a contract subject to the provisions of the VLA.

### Conclusion

The trial court did not err in awarding fees to respondents under Civil Code section 2988.9.

### DISPOSITION

The judgment is affirmed. The order awarding attorney fees is affirmed. Respondents are entitled to their costs and to reasonable attorney fees incurred on appeal.

Swager, J., and Margulies, J., concurred.